COMMONWEALTH of Pennsylvania

v.

Henry SIMMONS.

Appeal of MENTOR CLINICAL CARE, Appellant.

COMMONWEALTH of Pennsylvania

v.

Henry SIMMONS.

Appeal of MENTOR CLINICAL CARE, ("Mentor"), Appellant.

Superior Court of Pennsylvania.

Argued April 21, 1998.

Filed Oct. 2, 1998.

Michael D. Brophy, Philadelphia, for appellant.

Andrew G. Gay, Philadelphia, for Simmons, appellee.

William G. Young, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before FORD ELLIOTT, MUSMANNO and HOFFMAN,* JJ.

* Judge Hoffman did not participate in the consideration or decision of this case.

FORD ELLIOTT, Judge:

At issue in this case of first impression is whether and to what extent appellant Mentor Clinical Care, Inc. ("Mentor") may be compelled to produce documents pertaining to a child in Mentor's care. Mentor asserts that the documents at issue are absolutely protected from any disclosure under the psychotherapist-patient privilege, 42 Pa.C.S.A. § 5944, and that even an *in camera* inspection as directed by the trial court would violate the privilege.

Mentor provides treatment for a variety of "special needs" populations, including those in need of mental health care. Mentor is licensed by the Pennsylvania Department of Public Welfare, Office of Mental Health under 55 Pa.Code Ch. 5310 ("Community Residential Rehabilitation for the Mentally Ill"). As explained by Mentor, the facility involved in this case is located in Conshohocken, one of several such treatment centers in Pennsylvania. Within the "at risk" population treated by Mentor staff are children referred by the Philadelphia County Department of Human Services. Eligibility for placement in the Mentor program is dependent upon a referral from a practicing psychiatrist, who certifies that the mental health services provided by Mentor will benefit the DHS client.

The program is operated by a "treatment team." Dr. Allan Brooks, Mentor's Psychiatric Medical Director and a fully-licensed psychiatrist, leads the team. He works part-time (three days a week) for Mentor. Dr. Brooks evaluates the child before he or she is placed in the Mentor program, and conducts face-to-face evaluations approximately three times a year thereafter, or as needed in the opinion of the team. Dr. Brooks composes an Individual Service Plan (ISP) to be carried out by other members of the team. The ISP identifies the specific needs of the child, sets goals for meeting those needs, and proposes ways of measuring progress toward those goals. The ISP may include prescription medicines as well as non-medicinal activities and interactions designed to meet the particular needs of the child. Every 30 days,

Dr. Brooks reviews the notes and evaluations composed by other members of the team; every 60 days, he updates the ISP.

Perhaps the most important team member from the child's perspective is the mentor adult, also known as a "mental health technician." The child lives in the home of the mentor adult. The adult is trained by Mentor for at least three days in a variety of skills necessary for living with and caring for the child. In this case, the mentor adult, Mrs. Kellie Simmons, was trained in "client socialization and role modeling skills, structured day and community resources, CPR and first aid, time-out training, related issues from physiological and psycho-social case work, introduction to nursing, positive practices, counter transference, cultural diversity and sexual abuse." (Notes of testimony, 5/28/97 at 49, R.R. 62a–63a.)

The mentor adult is responsible for carrying out the ISP on a daily basis. She also keeps a daily observational log of the child's activities, knowing that this record will form the basis for measuring the child's progress and for modifying the ISP as necessary. This record, labeled a "Pennsylvania Mentor Long–Term Psychiatric Treatment Log," instructs the mentor to "Please highlight major incidents, describe observable behaviors – what is said, where or when, be objective and specific. Is the record free of labeling, blaming and interpretation?" (R.R. 89a.) In this log, the mentor is instructed to "Highlight positive/negative behaviors as they relate to the goals of the treatment plan." (*Id.*) The mentor adult enters into a contract with Mentor which describes the adult as an independent contractor. (R.R. 87a.)

Nine clinical coordinators with masters' degrees in social work, education, counseling, or other human services fields carry a case load of approximately eight children apiece. A clinical coordinator visits the child's home each week and discusses the child's needs, goals, progress, and any other pertinent information with the child and with the mentor adult. During these weekly visits, the clinical coordinator collects and reviews the daily logs compiled by the mentor adult. Finally, two program supervisors with masters' degrees in counseling, social work, or a related field oversee Mentor's clinical services.

In September 1992, minor T.W. was referred to Mentor's care.[1] Dr. Brooks initially evaluated T.W. and developed an ISP for her. Mentor assigned T.W. to live in the home of Mrs. Simmons. Her husband Henry Simmons, the defendant in the underlying criminal action, also lived in the home. Nothing in the record suggests that Mr. Simmons agreed to, or actually did, act as a mentor adult for the child.

Mr. Simmons has been charged with a number of crimes[2] arising from his alleged sexual abuse of T.W. On January 27, 1997, Mr. Simmons issued a subpoena to Mentor, demanding that it turn over its records concerning T.W. Mentor furnished certain records it did not consider privileged, and moved to quash the subpoena on the ground that the remainder of the records was protected from disclosure by the psychotherapist-patient privilege.[3]

On June 2, 1997, the trial court denied the motion to quash and issued this order:

It is hereby ORDERED:

1. Mentor Clinical Care's Motion to Quash defendant's subpoena is DENIED.

2. Mentor Clinical Care is directed to turn over the minor complainant's complete file to the Honorable D. Webster Keogh, or his designee. The assigned judge shall then determine whether any of the documents are subject to the psy-

---

1. No information regarding the referral appears in the record before this court.

2. Appellant was charged with indecent assault, aggravated indecent assault, corruption of a minor, endangering the welfare of a child, unlawful restraint, false imprisonment, and recklessly endangering another person.

3. At the first hearing on the subpoena in February 1997, Mentor sought to protect the records related to the interviews and evaluations of various social workers. Mentor did not believe that the logs kept by Mrs. Simmons were the subject of the subpoena. However, by the May 1997 hearing which led to the order under review, Mentor sought protection for its entire file citing the psychiatrist-patient privilege.

chiatrist-patient privilege. Such documents would be:

- those statements made by the minor complainant intended to be confidential communications **and** those obtained at the direction of a psychiatrist or licensed psychologist employed by Mentor Clinical Care; and

- those records of the psychiatrist or licensed psychologist which contain references to confidential communications of the minor complainant.

3. Mentor Clinical Care's oral motion to certify this matter for an interlocutory appeal is DENIED.

4. Mentor Clinical Care's oral motion to stay the order to produce the record is DENIED.

Mentor's brief at 2.

In its supporting opinion, the court reasoned that (1) because the statute does not extend the privilege to social workers, "any communications made by the child to the social worker or by Mrs. Simmons to the social worker are not privileged" (trial court opinion, 7/29/97 at 4); (2) "[n]o privilege will be granted to the workers of Mentor because they are not agents of any psychiatrists or psychologists" (*id.* at 4); (3) the training provided to Mrs. Simmons is insufficient to make her a therapist or an agent of the psychiatrist (*id.* at 5–6); (4) the daily logs are not privileged in that they are merely "reports by a lay person on a child's activities and developments, not on 'therapy sessions'

conducted to relay information to a psychiatrist" (*id.*); and (5) statements made by T.W. which are both intended to be confidential *and* obtained at the direction of a licensed psychologist employed by Mentor are to be privileged, as are the psychologist's records which contain references to those confidential communications. (*Id.* at 6–7).

■ Mentor refused to comply with the order. On June 9, 1997, the trial court held Mentor in contempt and imposed a $100 fine. Mentor filed separate appeals from the June 2nd and June 9th orders. The June 2nd order, requiring Mentor to produce a complainant's allegedly confidential and privileged therapeutic records in a criminal matter, is immediately appealable as a collateral order. *Commonwealth v. Miller,* 406 Pa.Super. 206,, 593 A.2d 1308, 1309–1310 (1991). Because the appeal of the June 2nd order is properly before us, and because Mentor's brief does not discuss the merits of the contempt order, we need not discuss the appealability of the contempt order.[4]

So far as can be discerned from the record, no court official has reviewed any of Mentor's documents, nor have any disputed documents been turned over to Mr. Simmons' counsel. Mr. Simmons' criminal trial has not yet taken place. Mentor, Mr. Simmons, and the Commonwealth have all filed briefs in this matter. The Commonwealth's brief argues in favor of extending the privilege of § 5944 to all of Mentor's records.

---

4. The continuing procedural circumstances giving rise to this appeal are somewhat complex. In a separate order dated June 9, 1997, the court again ordered Mentor to turn over its records for *in camera* inspection. Mentor complied with this second order and turned its records over to Judge Renee Caldwell Hughes. On June 16, 1997, Mentor filed an appeal from the June 2nd order compelling production of records. Attached to this appeal was a petition for stay of the order pending appeal. On June 19, 1997, this court denied Mentor's stay application. On June 30, 1997, Mentor appealed from the trial court's June 9th contempt order. This appeal was then consolidated with Mentor's appeal of the June 2nd order.

In a supplemental opinion, the trial court writes that "because of the press of business, from June, 1997 to December, 1997, Judge Hughes was unable to review the massive stack

of records. The criminal case was repeatedly continued." (Trial court supplemental opinion, 1/16/98 at 3.) In December 1997, the trial court directed Mentor to (1) retrieve the records from Judge Hughes; (2) mark any documents that were privileged as defined by the court's June 2nd order; and (3) return the entire file to Judge Hughes by January 6, 1998, at which time all unmarked documents would be sent to defendant Simmons. The court "confirmed" these informal instructions in an order dated December 24, 1997. Mentor then filed an application to stay the December 24th order. The superior court granted this application on January 6, 1998. Mentor's consolidated appeal from the trial court's June 2nd and June 9th orders is now before us. The trial court indicates that Mentor retrieved the documents from Judge Hughes "under questionable circumstances." (Trial court opinion, 1/16/98 at 4.)

Mentor presents this Statement of the Question Involved:

Do psychiatric treatment records, including patient evaluations, progress notes, and behavioral observations, lose the protection of the absolute psychiatrist/patient privilege codified at 42 Pa.C.S.A. § 5944 merely because they do not consist of or contain references to the patient's confidential communications made to or obtained at the specific direction of her psychiatrist or psychologist?

Mentor's brief at 4.

Mentor argues that the trial court abused its discretion in limiting the protection of the privilege to those documents described in its June 2nd order. Mentor also argues that failing to protect the entire file would subvert the purpose of the psychotherapist-patient privilege, destroy the confidential relationship between T.W. and her treatment team, and "have detrimental effects on the mental health services offered by Mentor and other like institutions within this Commonwealth." (*Id.* at 10.) Although we find that Mentor's interpretation of the privilege is too broad, we also find the trial court's application of the privilege is too limited. Therefore, we vacate the trial court's order and remand.

■ As a general matter, "Pennsylvania law does not favor evidentiary privileges." *In re Subpoena No. 22*, 709 A.2d 385, 388 (Pa.Super.1998), citing *Commonwealth v. Stewart*, 547 Pa. 277, 282, 690 A.2d 195, 197 (1997) (clergy-communicant privilege applies only to confidential communications from communicant to clergy in his/her capacity as a spiritual advisor). "Thus, courts should accept testimonial privileges only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Stewart, supra* at 282, 690 A.2d at 197 (internal quotations omitted).

■ When reviewing a court's disposition of a motion to quash a subpoena, we grant great deference to the factual findings of the trial court. We will affirm the court's decision unless we find that the court abused its discretion or committed an error of law. *In re Subpoena No. 22*, 709 A.2d at 386.

The psychotherapist-patient privilege reads as follows:

§ 5944. Confidential communications to psychiatrists or licensed psychologists

No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52) [63 P.S. § 1201 *et seq.*], to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944.

The importance of the psychotherapist-patient privilege has been thoroughly addressed by this court.

Modeled after the attorney-client privilege, [Footnote 1] codification of the psychotherapist-client privilege is based upon a strong public policy that confidential communications made by a client to the psychotherapist should be protected from disclosure, absent consent or waiver. *Commonwealth v. Fewell*, 439 Pa.Super. 541, 548, 654 A.2d 1109, 1112 (1995).

The privilege afforded by § 5944 was intended to inspire confidence in the client and to encourage full disclosure to the psychologist [and psychiatrist]. By preventing the latter from making public any information which would result in humiliation, embarrassment or disgrace to the client, the privilege is designed to promote effective treatment and to insulate the client's private thoughts from public disclosure.

*Id.* at 548–49, 654 A.2d at 1112–13 (quoting *Commonwealth v. Kyle*, 367 Pa.Super. 484, 500, 533 A.2d 120, 128 (1987), *appeal denied*, 518 Pa. 617, 541 A.2d 744 (1988)).

All fifty state legislatures and the District of Columbia have enacted into law some form of the psychotherapist-client

privilege. *Jaffee v. Redmond,* [518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996),]*supra* at 12 & n. 11 [ ... ]. The states also recognize a variety of exceptions to the privilege. *Id.* at 1930 n. 13, [116 S.Ct. 1923]. The law in this Commonwealth makes clear that the privilege accorded confidential communications between the client and the psychotherapist must prevail under most circumstances.

---

[Footnote 1] 42 Pa.C.S.A. § 5916 and § 5928.

*In re Subpoena No. 22,* 709 A.2d at 388–389. The privilege, while testimonial in nature, has been held to cover the psychotherapist's client files which would contain the confidential communications of the client. *Commonwealth v. Smith,* 414 Pa.Super. 208, 606 A.2d 939 (1992), *appeal denied,* 533 Pa. 624, 620 A.2d 490 (1993); *Commonwealth v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036 (1992), *appeal denied,* 531 Pa. 638, 611 A.2d 711 (1992); *Kyle, supra.*

In cases where the § 5944 privilege has been found to apply, case law has precluded the privileged material from being subjected to even *in camera* review by trial courts:

We decline to compromise what we have determined is an absolute privilege from disclosure. As we noted above, the purpose of the psychologist-client privilege is to aid in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure. We deem this purpose and the underlying considerations to be of paramount concern. Subjecting the confidential file to *in camera* review by the trial court (as well as the appellate courts and staff members) would jeopardize the treatment process and undermine the public interests supporting the privilege. Simply stated, an absolute privilege

of this type and in these circumstances requires absolute confidentiality.

*Kyle, supra* at 504, 533 A.2d at 131.

■ Looking to the purposes of the privilege as addressed in such cases as *Kyle* and *In re Subpoena No. 22,* it is clear that the privilege is designed to protect confidential communications made and information given by the client to the psychotherapist in the course of treatment. The psychiatric file is imbued with the privilege because it might contain such confidential information. However, the privilege is not designed to specifically protect the psychotherapist's own opinion, observations, diagnosis, or treatment alternatives particularly when such information finds its way beyond the client's personal file. While such information may be protected from disclosure by some other privilege, we decide that the § 5944 privilege is designed to protect disclosures made by the client. Having said this, we need to look to the precise nature of the files Mentor seeks to protect, and their actual role in the treatment process. One of the most difficult aspects of this case is that the record does not contain a clear and comprehensive sense of what Mentor's files actually contain. For better or for worse for Mentor, we will rely on Mentor's own summary of their content.

As noted above, Mentor is licensed by the Pennsylvania Office of Mental Health under 55 Pa.Code Ch. 5310 as a Community Residential Rehabilitation Service (CRRS) Facility for the Mentally Ill. The licensing requirements and record-keeping obligations of such facilities are carefully set forth in the Code. The Code's statement of policy for CRRS makes it clear that the facility is one component in the comprehensive treatment of mentally ill persons, and must work cooperatively with other service agencies.[5] Men-

---

5. **§ 5310.2 Policy.**

    (a) Community Residential Rehabilitation Services (CRRS) are specifically designed and operated to assist persons with chronic psychiatric disability to live as independently as possible through the provision of training and assistance in the skills of community living and by serving as an integrating focus for the person's rehabilitation. CRRS are

defined, regulated and operated to implement the principle of least restrictive service alternative. An individual shall be served by CRRS only for so long as the services are consistent with his need for services.

    (b) The CRRS can exist only in a system of services for their clientele and cannot function without ties to other service providers. Rehabilitation of severely psychiatrically dis-

tor is required to develop an Individual Service Plan based on a client's psychological evaluation which assesses the client's strengths and needs as they relate to independence in a residential environment. Pursuant to 55 Pa.Code § 5310.33(c) and § 5310.123(c) the Service Plan must include the following items:

(1) Short and long-term goals for service formulated jointly by the staff and client [or, in the case of child clients under age 14, by the parent and agency having legal custody of the child, if applicable].

(2) Behaviors to be modified and skills to be developed.

(3) Type and frequency of rehabilitation services to be provided.

(4) Techniques and methods of service to be used.

(5) A list of persons involved in the implementation of the plan.

Additionally, the original residential service plan, subsequent plan revisions, written plan reviews, and documentation of client participation must be included in the client record. § 5310.33(g). Mentor asserts that based on these requirements, T.W.'s records include the following information which Mentor considers confidential:

- reports of alleged sexual and physical abuse of T.W.;

- Individual Service Plans prepared under the supervision of Dr. Brooks, addressing for the treatment team each of T.W.'s behavioral problems and recommended course of treatment;

- psychiatric evaluations prepared by Dr. Brooks on the basis of records, such as daily logs, notes and other communications not exclusively attributable to T.W.;

- visitation plans and other records disclosing T.W.'s family member[s] and behavioral problems of T.W.'s siblings;

- clinical evaluations of T.W. prepared by licensed social workers, referencing psychiatric diagnoses;

- medications prescribed for T.W. by Dr. Brooks; and

- family progress notes and daily log notes of the mentor, Kellie Simmons.

Mentor's brief at 9.

What is curiously missing from this summary is any reference to confidential communications made or information given specifically by T.W. While we agree with Mentor that the above information is sensitive, and we believe it may very well be confidential and protected from disclosure under 55 Pa. Code §§ 5310.52 and 5310.142 and perhaps other provisions of the Mental Health Procedures Act, 50 P.S. § 7111, which will be addressed *infra*, we do not agree that such records are protected by the psychotherapist-patient privilege, 42 Pa.C.S.A. § 5944.

Mentor's records are developed in compliance with Mentor's responsibilities as a licensed CRRS provider. The record-keeping requirements of CRRS providers are set forth in the Code. Undoubtedly, the logs, interviews, and records are formulated to comply with T.W.'s overall treatment plan. However, although based upon private dis-

abled individuals requires many and diverse services: CRRS have as their part in the process the development of the clients' skills for independent living and for community participation while more general social and vocational skills are developed and treatment occurs. CRRS' have an obligation to work cooperatively with other service agencies and with local coordinating and planning groups toward the development and operation of a comprehensive service system which can meet the needs of chronically mentally ill persons in a continuous, timely and coordinated manner.

(c) The CRRS have the following essential characteristics:

(1) A homelike, noninstitutional environment providing maximum opportunity to learn the skills necessary for more independent living.

(2) A residential setting providing each client with maximum possible autonomy, independence and self-determination.

(3) A program which constantly strives to enable clients to move to less restrictive living settings.

(4) Responsible staff to support and assist the client as needed in his movement to independence.

(5) Well-developed cooperative efforts with other agencies in the service delivery system to ensure coordinated, continuous and effective services for the rehabilitation of clients.

cussions with T.W., the treatment plan itself is generated by Dr. Brooks and his team pursuant to the specific requirements of the Code.

■ While we believe that much of the record material Mentor seeks to protect goes beyond that which is specifically protected by § 5944, we believe that certain material may very well be covered by the privilege. The trial court recognized, and we agree, that to the extent any interview with T.W. reflects a confidential communication made by her to Dr. Brooks in the course of evaluation and treatment, then such a statement is protected by § 5944. However, the trial court refused to cloak Mentor, the social workers, or Mrs. Simmons with the privilege based primarily on their lack of training. While we agree that the exercise of the privilege is very limited with respect to other members of the team, we do find that any oral communication by T.W. in private to *any* member of the treatment team and used by the team for the purpose of psychotherapeutic evaluation is privileged. Additionally, any reference to such a communication in Mentor's files is privileged as well.

■ As set out *supra,* the § 5944 privilege sets forth that "The confidential relations and communications between a psychologist and his client shall be on the same basis as those provided or prescribed by law between an attorney and a client." In determining whether a communication by a client to someone other than his attorney is covered by the attorney-client privilege, courts have held that as long as the recipient of the information is an agent of the attorney and the statement is made in confidence for the purpose of facilitating legal advice, it is privileged. *Commonwealth v. Noll,* 443 Pa.Super. 602,, 662 A.2d 1123, 1126 (1995), *appeal denied,* 543 Pa. 726, 673 A.2d 333 (1996) (confidential statement to accident reconstructionist hired by attorney to determine whether the client should sue is privileged); *Commonwealth v. Mrozek,* 441 Pa.Super.

425, 428–31, 657 A.2d 997, 999–1000 (1995) (inculpatory statement to attorney's secretary made while defendant was seeking to retain attorney for legal representation and advice is privileged); *Commonwealth v. Hutchinson,* 290 Pa.Super. 254,, 434 A.2d 740, 744–745 (1981) (inculpatory statement made to investigator for public defender's office is privileged). In the attorney-client context, the job description of the recipient of a confidential communication or their lack of legal training is irrelevant so long as the recipient is an agent of an attorney and the statement is made in confidence for the purpose of obtaining or facilitating legal advice. We find that this reasoning should apply with equal force to members of the Mentor treatment team in conversations with T.W. in the course of facilitating the treatment plan.

Moreover, in *Kalenevitch v. Finger,* 407 Pa.Super. 431,, 595 A.2d 1224, 1228 (1991), we held that confidential communications to the agent of a licensed psychologist were privileged under § 5944. In that case, statements regarding the cause and extent of pain made by the patient to a nurse who was administering stress management therapy as directed by the psychologist were held to be privileged and inadmissible in a subsequent automobile accident lawsuit. The court relied upon the analogy to the attorney-client privilege to support its holding.

In line with *Kalenevitch,* we have little doubt that mentor adult Kellie Simmons, the clinical coordinators, and the program coordinators are all subordinates of Dr. Brooks, Mentor's Psychiatric Medical Director. Dr. Brooks oversees the child's treatment, evaluates the child at least three times per year, and revises the ISP every 60 days. The other members of the treatment team work together under Dr. Brooks to implement the ISP on a regular and ongoing basis, and report to Dr. Brooks periodically. Thus, the mere fact that the other members of the treatment team were not themselves psychologists does not defeat the privilege should it otherwise apply.[6] T.W. is entitled to protec-

---

**6.** In *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the United States Supreme Court held that Federal Rule of Evidence 501 recognized a psychotherapist-patient privilege, and that the privilege extended to the notes of confidential communications between a client and a licensed social worker performing psychotherapeutic services. We need not specifically decide if a social worker's notes are protected absent a agency relationship with a licensed

tion in her confidential communications to members of the team. Furthermore, as with the attorney-client privilege, the privilege attaches not only to statements by T.W. specifically elicited by the "agent," but also to volunteered or spontaneous confidential communications from the client to the agent. Thus, the trial court erred by limiting privileged material to confidential communications "obtained at the direction of" Dr. Brooks.

■ Additionally, we find the trial court erred in requiring Mentor to turn over its complete file on T.W. to the trial court for an *in camera* determination as to whether the privilege should apply to any material in the file. Having determined that the § 5944 privilege protects any confidential statements made by T.W. to any member of the treatment team during the course of private interviews conducted for purposes of review and evaluation of the treatment plan, such file material is not subject to any *in camera* review. *Kyle, supra*; Kennedy, *supra*.

■ The co-extensive nature of the psychotherapist-patient privilege and the attorney-client privilege lends further support to our determination that only the confidential communications of T.W. are protected under § 5944. Following an interview with a client, an attorney will evaluate the legal claim, develop a legal strategy, and research legal alternatives, all of which are based on the confidential communications of his client. However, such files and material developed by the attorney are not protected by the attorney-client privilege. Rather, a separate rule has been developed to shield the attorney's work product, Pa.R.Civ.P. 4003.3. This rule may immunize "the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories." Leonard Packel & Anne Bowen Poulin, Pennsylvania Evidence § 502 (1987) at 314. Using this same analysis, Mentor's files containing diagnoses, opinions, evaluations, and treatment plans may all be directly related to client interviews; however, they are not confidential communications from the

psychiatrist or psychologist, because we find that the members of the treatment team were acting

client covered under § 5944. Having accepted Mentor's summary of the contents of its treatment files, we once again conclude that except for interviews which include oral statements by T.W. herself as addressed *supra*, the Mentor files generally are not subject to § 5944.

However, we cannot simply remand at this point for further discovery of the remainder of Mentor's files or even a limited *in camera* review of non-privileged material. Just as with the attorney work product doctrine, we believe that Mentor's files may very well be subject to additional confidentiality protections.

Mentor has directed us to 55 Pa.Code Ch. 5310 for a codification of its licensing and record-keeping requirements. Having reviewed this chapter, this court takes specific notice of § 5310.52 which deals with the confidentiality of CRRS records generally and § 5310.142 which incorporates these provisions for confidentiality of records involving children. These provisions are set forth as follows:

§ 5310.52. Confidentiality

(a) All client records and information are confidential and may not be disclosed directly or indirectly without the written consent of the client except:

(1) To those persons actively engaged in implementing the client's residential or overall treatment plan.

(2) To persons using material from client records for teaching, training or research purposes, provided the use and dissemination of such data does not identify individual clients and a specific, written request stating the purpose for the disclosure is approved by the Director.

(3) To any governmental or third party payor which funds in whole or in part the cost of the client's care.

(4) To reviewers and inspectors when necessary to obtain certification on an eligible provider of services.

(5) Under court order.

as agents of Dr. Brooks in this case.

(6) In accordance with other applicable Federal and State regulations.

(b) Information made available under this section must be limited to that information necessary for the purpose for which the information is sought.

(c) Annually, these confidentiality requirements must be reviewed with all staff, volunteers, students, and others, as applicable, and as they enter their position or are assigned to the CRRS.

(d) The community residential rehabilitation service (CRRS) must keep client records within locked storage containers at all times when not in active use by program staff.

(e) Client written consent is required to disclose information from the client's record. The consent form must include the:

(1) Date and nature of request for information.

(2) Name of the person, agency or organization to whom disclosure is made.

(3) Type of information disclosed.

(4) Dated signature of the client.

(5) Dated signature of a witness.

(6) Expiration date of consent form.

(7) Statement of the client's right to revoke consent.

(f) One copy of each signed consent form must be given to the client and one copy included in the client's case record.

\*     \*     \*     \*     \*     \*

## § 5310.142. Confidentiality.

(a) All client records and information are confidential and may not be disclosed directly or indirectly without the written consent of the child's parent or the agency having custody of the child, if applicable, and the child if the child is 14 years of age or older.

(b) Exceptions stated in § 5310.52(a)(1)—(6) apply to client records and information in community residential rehabilitation service (CRRS) for children.

(c) Written consent is required by the child's parent or the agency having custody of the child, if applicable, and the child if the child is 14 years of age or

older to disclose information from the child's record and must include:

(1) Date and nature of request for information.

(2) Name of the person, agency or organization to whom disclosure is made.

(3) Type of information disclosed.

(4) Dated signature of the child's parent, or the agency having legal custody of the child and the child if the child is 14 years of age or older.

(5) Dated signature of a witness.

(6) Expiration date of consent form.

(7) Statement of the rights of the parent or agency having custody of the child and the child to revoke the consent each has given.

(d) A copy of each disclosure consent form must be given to the parent or agency having legal custody and the child if the child is 14 years of age or older. A copy must also be placed in the child's case record.

(e) Subsections (a) and (b) supersede § 5310.51(a) (relating to confidentiality); subsection (c) supersedes § 5310.52(e); and subsection (d) supersedes § 5310.52(f).

The exceptions provided by these sections do not make the files themselves any less confidential. Rather, the exceptions clearly define to whom and for what purpose confidential information may be disclosed. The exceptions are further modified by § 5310.52(b) which allows for the disclosure of information that is *limited to the purpose* for which the information is sought. It appears to this court that Mentor's records are required to be deemed confidential. These Code sections along with others referenced below are drafted to codify the intent and procedures of the Mental Health Procedures Act (MPHA). It would appear that pursuant to 50 P.S. §§ 7103 and 7105, a CRRS facility may be covered under the MPHA. The MPHA additionally contains its own, and more restrictive, confidentiality provisions under § 7111. Finally, we direct the parties' and the trial court's attention generally to 55 Pa.Code Ch. 5100 and its provisions governing confidentiality and release of confidential

information to and by courts as instructive on the issue of disclosure by court order.

What is eminently clear from a cursory review of all of this material is that the legislature has determined that mental health treatment records such as those before the court are entitled to protection from disclosure. How much protection and in what manner and form any disclosure may occur is not presently before this court.[7] On the state of this record, and because neither this court nor the trial court has been informed by the parties as to the applicability of other statutory confidentiality requirements, we are required to remand this matter to the trial court. The confidentiality of these records cannot be deemed waived by Mentor because such a waiver belongs only to the client as set forth in the Code. On remand, we caution the trial court that before any confidential information from T.W.'s mental health records may be reviewed or released, a thorough examination of relevant statutory and Code provisions should take place.

The trial court's orders of June 2nd and June 9th are vacated, and the case is remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

---

**7.** For a brief discussion of the burden of proof in such matters, *see In re Subpoena No. 22,* 709

A.2d at 388, and cases cited therein.