In the Matter of L.F.

**Appeal of L.W. Mother.**

Superior Court of Pennsylvania.

Submitted Jan. 4, 2010.
Filed April 19, 2010.

———

Edward M. Flannery, Philadelphia, for appellant.

Jeri H. Berman, Cynthia N. Keller, Philadelphia, for Dept. of Human Services, appellee.

Neil M. Krum, Philadelphia, for L.F., appellee.

BEFORE: STEVENS, SHOGAN, and COLVILLE *, JJ.

OPINION BY STEVENS, J.:

¶ 1 L.W. (Mother) appeals from the order entered on May 4, 2009, granting the petition to terminate her parental rights to her son, L.F. (d.o.b.5/26/01) (Child). The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and changed his goal to adoption pursuant to 42 Pa.C.S.A. § 6351.[1] Mother claims the trial court abused its discretion in compelling Mother's therapist to testify and improperly considered her testimony in

---

* Retired Senior Judge assigned to the Superior Court.

1. The trial court also terminated the parental rights of the Child's unknown putative father.

making its decision to terminate Mother's parental rights. We affirm.

¶ 2 The trial court set forth the facts and procedural history of his case as follows: On July 31, 2006, when [Child] was five years old, DHS obtained a restraining order and took him into custody based on a Child Protective Services (CPS) report that Mother had sexually abused him. On August 10, 2006, [Child] was adjudicated dependent [and was placed in foster care]. Shortly thereafter, Family Service Plan ("FSP") objectives were developed for Mother, geared toward the permanency goal of reunification. The FSP objectives for Mother included both general and specialized parenting education, housing, individual therapy, specialized group therapy, family therapy, family visits, and identification of [Child]'s father....

These objectives remained substantially unchanged until June 16, 2008, when the FSP permanency goal was changed to adoption because [Mother] had failed to achieve her objectives within the time limits specified by the federal Adoption and Safe Families Act (ASFA) and the Pennsylvania Adoption Act. Although Mother had obtained appropriate housing, had completed some parenting education, and had participated in a number of individual therapy sessions, she had only recently enrolled in specialized parenting classes, and her therapy had been terminated due to inconsistent attendance and uneven engagement in counseling.[2] Due to her lack of progress in therapy, her visits with [Child] had stopped, and she had not been permitted to have contact with her son—even on a supervised basis—for over a year.

In accordance with [the trial court's] order, Dr. [Barry] Zakireh of the Joseph J. Peters Institute (JJPI) performed a psychiatric evaluation of Mother [over several sessions in May–June 2007]. [During the hearing on DHS's petition to terminate Mother's parental rights,] Dr. Zakireh testified that during the evaluation, [Mother] disclosed a history of sexual abuse by her father, six prolonged psychiatric hospitalizations between 1998 and 2006, and psychiatric difficulties including suicidal ideations, depression, visual and auditory hallucinations, and flashbacks of her abuse. According to Dr. Zakireh, findings on evaluation supported several significant psychiatric diagnoses, including psychotic disorder, post-traumatic stress disorder, and paraphelia, which he defined as long term, persistent sexual urges or behaviors involving non-consenting partners, children, or non-human objects. He also noted that [Mother] manifested significant sexual interest in both male and female children between the ages of two and four and between the ages of eight and ten....

Based on all his findings, Dr. Zakireh opined that [Mother] posed a moderate to high risk or potential for sexual aggression or deviant sexual behavior. It was his advice, therefore, that [Mother] not have contact with minors—especially her son—unless she participated in, and made progress through, sex abuse treatment. Dr. Zakireh opined further, that [Mother's] treatment should last "indefinitely," that is, it should not be terminated unless she measured demonstrable progress.

\*     \*     \*

[The trial court] also heard the testimony of DHS and agency social workers that adoption would be in [Child's] best

2. Mother's failure to attend several therapy sessions was a result of multiple periods of psychiatric hospitalization. N.T., 1/28/09, at 27, 36, 38, 81.

interest. The social workers emphasized that Mother had failed to accomplish her FSP objectives within the time-frame mandated by AFSA and the Adoption Act and had not reached a point in her sex abuse therapy where it would be safe for her to have even supervised visits with her son. They reported that [Child] had been doing well in foster care for over 2½ years, [observing] that he had bonded with his foster mother and did not ask about his birth mother. They testified that foster mother had recently declined to follow through with the adoption,[3] but that maternal great aunt, with whom [Child] had a relationship, was being considered as an adoptive resource. Moreover, [Child] was in adoption therapy to help prepare him for a change in placement, so successful adjustment to a new placement was considered likely.

Trial Court Opinion, 8/11/09, at 2–4 (citations and footnotes omitted).

¶ 3 On June 30, 2008, DHS filed petitions for the involuntary termination of the parental rights of Mother and the unknown putative father and to change Child's goal to adoption. The trial court held hearings on the petitions on July 21, 2008, January 6, 2009, January 28, 2008, and May 4, 2009. At the January 28th hearing, Mother testified on her own behalf, admitting that she engaged in sexually inappropriate conduct with Child, but asserted that she did not know it was improper at the time.[4] Although Mother articulated her love for her son and her desire to work towards reunification, Mother expressed her own doubt about her ability to care for Child any time in the near future, testifying:

> I have been away from my son for so long, that I even worry about whether I will be able to take care of a child right now. I don't have the financial means right now, because I live in an apartment. But I am willing for my aunt to take him, you know, I am willing for her to take him. She's able to, if you grant her to take him.
>
> I want to be reunited with my son. I really want to. I want to take care of him. ... But I want to make sure my mental health is good and that I am doing the things I am supposed to do.

N.T., 1/28/09, at 72.

¶ 4 DHS proceeded to call as a witness Alyson Schroeder, a licensed clinical social worker at JJPI with whom DHS contracted to provide Mother therapy focused on her sexually inappropriate behavior towards Child and her own past history of sexual abuse at the hands of her father. Mother attempted to invoke a "patient/therapist" privilege to prevent Ms. Schroeder from testifying as to their confidential communications.[5] N.T., 7/21/08, at

---

3. The record reveals that Child's foster mother reconsidered adopting Child due to safety concerns as she feared what would happen if Mother knew that she was the adoptive resource. N.T., 1/28/09, at 49.

4. Although she had stopped breastfeeding Child when he was an infant, Mother testified that she "sporadically breastfed [Child at the age of five years old] for about a minute or two... [but] it was only one time." N.T., 1/28/09, at 56–57. Mother also admitted to allowing Child to pull up her blouse, lay on her breasts, and kiss her on the mouth. Id. at

57–58. When questioned about Dr. Zakireh's testimony that Mother had confided to him about having sexual encounters with minors, Mother denied such allegations, but then admitted to having sexual intercourse with a sixteen-year old boy when she was in her twenties. Id. at 61.

5. Counsel for Mother initially argued that Ms. Schroeder's testimony was protected by a "doctor/patient privilege," but later clarified she was attempting to invoke a "therapist/patient privilege." N.T., 7/21/08, at 24; N.T., 1/6/09, at 5–6.

24; N.T., 1/6/09, at 5–6. The trial court took the matter under careful consideration, but eventually allowed Ms. Schroeder to testify provided that she limited her testimony to information about Mother's compliance with and progress in sex abuse therapy and did not reveal the content of Mother's communications. N.T., 7/21/08, at 27; N.T., 1/28/09, at 78.

¶ 5 Ms. Schroeder complied with the trial court's request and answered DHS's directed questions without revealing any communications she shared with Mother. N.T., 1/28/09, at 79–87. Ms. Schroeder testified that her ability to provide Mother treatment was limited by Mother's poor attendance at their scheduled sessions due to Mother's psychiatric hospitalization. *Id.* at 81. Once Mother began regularly attending therapy, Ms. Schroeder observed that Mother's mental health issues interfered with her progress and that she was not close to completing treatment. *Id.* at 82–83. Using general language, Ms. Schroeder confirmed Mother admitted to aspects of her sexually inappropriate behavior that Mother had already testified to at trial, but opined that Mother "wasn't understanding the full seriousness of the behavior and its impact on [Child]." *Id.*

¶ 6 Upon the conclusion of the termination hearings on May 4, 2009, the trial court entered an order terminating Mother's parental rights and changing Child's goal to adoption. Mother filed her notice of appeal and her statement of errors complained of on appeal on June 3, 2009.

¶ 7 Mother raises the following questions on appeal:

1. Did the trial court abuse its discretion or err as a matter of law in

compelling Mother's therapist to testify?

2. Whether the admission of testimony of Mother's therapist over objection was not harmless error and contributed to the trial court's decision to change the goal to adoption and terminate her parental rights?

Mother's Brief, at 3.

¶ 8 We are guided by the following standard in cases involving the termination of parental rights:

Our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child. We have always been deferential to the trial court as the fact finder, as the determiner of the credibility of witnesses, and as the sole and final arbiter of all conflicts in the evidence.

*In re I.J.*, 972 A.2d 5, 8–9 (Pa.Super.2009) (citing *In re S.D.T., Jr.*, 934 A.2d 703, 705–706 (Pa.Super.2007)).

¶ 9 In support of her claim that the trial court abused its discretion in allowing licensed clinical social worker Alyson Schroeder to testify as to privileged information,[6] Mother relies on 42 Pa.C.S.A. § 5944, which states:

**§ 5944. Confidential communications to psychiatrists or licensed psychologists**

No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional

6. We note that Mother did not prevent Dr. Zakireh from testifying as to the confidential communications Mother shared with him in the court-ordered psychiatric evaluation in which Mother's participation was voluntary.

services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944.

¶ 10 DHS argues that because the psychotherapist privilege under Section 5944 only applies to "psychiatrists and licensed psychologists," Mother has not proven she was entitled to invoke this privilege as Ms. Schroeder is a licensed clinical *social worker.* Mother concedes this point, but urges this Court to adopt the approach taken by the United States Supreme Court in *Jaffee v. Redmond,* 518 U.S. 1, 9–10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), in which the Supreme Court established the federal psychotherapist privilege extends to protect confidential communications made to licensed social workers in the course of psychotherapy. Mother argues that "drawing a distinction between the counseling provided by costly psychiatrists and psychologists and the counseling provided by more readily accessible social workers serves no discernible public purpose." Mother's Brief, at 13 (quoting *Jaffee,* 518 U.S. at 17, 116 S.Ct. 1923).

¶ 11 It is well established that, as a general rule, "Pennsylvania law does not favor evidentiary privileges." *Commonwealth v. Simmons,* 719 A.2d 336, 340 (Pa.Super.1998) (citing *In Re Subpoena No. 22,* 709 A.2d 385, 388 (Pa.Super.1998); *Commonwealth v. Stewart,* 547 Pa. 277, 282, 690 A.2d 195, 197 (1997)). As a result, "courts should accept testimonial privileges only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Simmons,* 719 A.2d at 340 (citing *Stewart,* 547 Pa. at 282, 690 A.2d at 197 (internal quotations omitted)).

¶ 12 Although our courts have refrained from directly addressing whether the Legislature intended that the privilege outlined in Section 5944 extend to confidential communications with licensed clinical social workers,[7] we need not reach that question in the case *sub judice,* as Mother has not pointed to any specific instances in which Ms. Schroeder testified to confidential communications. We have recognized this limit to the psychotherapist privilege, providing that:

> [I]t is clear that the [psychotherapist/patient] privilege is designed to protect confidential communications made and information given by the client to the psychotherapist in the course of treatment. ... *However, the privilege is not designed to specifically protect the psychotherapist's own opinion, observations, diagnosis, or treatment alternatives* particularly when such information

7. In *Simmons,* the trial court directed a mental health program to make available a minor's psychiatric file to determine if any of the documents were subject to the psychiatrist-patient privilege. The trial court held that because Section 5944 does not expressly extend such privilege to social workers, any communications made by the child to the social workers were not privileged. *Simmons,* 719 A.2d at 339. This Court held that the psychotherapist/patient privilege applied to social workers in the limited situation where the social worker works as an agent under the direct supervision of a licensed psychiatrist/psychologist who approves the patient's individual treatment plan and had close contact with the social worker to discuss the patient's progress and goals. *Id.* at 342–343. In the case *sub judice,* there is no indication from the record that Ms. Schroeder's treatment of Mother was supervised by a psychiatrist or psychologist or that Schroeder was a part of mental health care team.

finds its way beyond the client's personal file.

*Simmons*, 719 A.2d at 341 (emphasis added). Mother cites seven pages of case law in support of her claim that the trial court abused its discretion in compelling the testimony of Mother's therapist. Yet Mother's argument does not contain a single allegation that any specific testimony elicited from Mother's therapist was covered by any form of privilege. In fact, the record shows that the trial court took the matter under careful consideration and allowed Ms. Schroeder to testify only to information about Mother's compliance with and progress in sex abuse therapy, in order to determine if reunification with Child was possible. Ms. Schroeder followed the trial court's instructions and was careful not to reveal the content of Mother's communications. Thus, we find the trial court did not err in compelling Mother's licensed clinical social worker to testify to information not covered by any privilege.

¶ 13 As we have found that Ms. Schroeder did not reveal any confidential communications with Mother, Mother's second claim that the admission of this testimony improperly contributed to the trial court's decision to terminate her parental rights is also without merit. After thoroughly reviewing the record, briefs, and the applicable law, we find that the trial court ably and methodically reviewed the evidence and properly terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

¶ 14 Order affirmed.

¶ 15 COLVILLE, J. FILES A CONCURRING OPINION.

1. This act is codified at 63 P.S. § 1201 *et seq.*

## CONCURRING OPINION BY COLVILLE, J.:

¶ 1 Appellant claims that the trial court erred by refusing to protect from disclosure testimony from Appellant's therapist, who happens to be a social worker. According to Appellant, her therapist's testimony was privileged pursuant to 42 Pa. C.S.A. § 5944. In order to determine whether Appellant is correct, we must know whether the social worker is "a psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52),[1] to practice psychology[.]" 42 Pa.C.S.A. § 5944. Assuming the social worker does meet one of these criteria, we also must know whether she was "examined ... as to any information acquired in the course of [her] professional services in behalf of [Appellant]." *Id.* Appellant's brief to this Court is devoid of this critical information.

¶ 2 We cannot assume that the social worker is a psychiatrist or licensed to practice psychology pursuant to 63 P.S. § 1201 *et seq.* Moreover, I do not believe it is the function of this Court to sift through testimony in an effort to determine whether Appellant's nebulous assertion of a privilege applies to any of the testimony. Rather, it is Appellant's duty to cite with specificity where the alleged error occurred. *See, e.g.,* Pa.R.A.P. 2119(e).

¶ 3 Appellant's argument to this Court is underdeveloped to the point that it substantially impairs this Court's ability to assess Appellant's claim. I would reject Appellant's claim on this basis. *See Commonwealth v. Gibbs*, 981 A.2d 274, 284 (Pa.Super.2009) ("It is Appellant's obligation to sufficiently develop arguments in his brief by applying the relevant law to the facts of the case, persuade this Court

that there were errors below, and convince us relief is due because of those errors. If an appellant does not do so, we may find the argument waived.").