J-A27035-19

2020 PA Super 31

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT
                                  : OF PENNSYLVANIA
               v.                   :
                                  :
BRANDON A. SEGARRA           :
                                  :
APPEAL OF: COMPLAINANT WITNESS, :
D.G., A MINOR                      : No. 3097 EDA 2018

Appeal from the Order Entered September 20, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010618-2017

BEFORE: BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:          **FILED FEBRUARY 10, 2020**

D.G., a minor, appeals from a September 20, 2018 discovery order, where the trial court orally ordered D.G.'s legal counsel and guardian *ad litem* (Child Advocate) to review D.G.'s mental health records and report her findings to the trial court.[1] We reverse.

We glean the following relevant factual and procedural history from the record. In December 2017, Brandon A. Segarra was charged with raping D.G., and related crimes. The rape is alleged to have occurred in 2015 when D.G. was 15 years old. In preparation for Segarra's trial, the Commonwealth subpoenaed D.G.'s non-privileged medical records from the

---

[1] We address the issue of appealability *infra*.

* Retired Senior Judge assigned to the Superior Court.

Horsham Clinic,[2] where D.G. received mental health treatment. According to the Commonwealth, the subpoena specifically stated that the request excluded mental health records.[3] Nonetheless, without notifying D.G. or obtaining her consent, the Horsham Clinic disclosed D.G.'s mental health records to the Commonwealth. The Commonwealth did not review the records.[4] N.T., 9/20/2018, at 3, 11.

On September 14, 2018, Segarra filed a motion to compel discovery of D.G.'s mental health records.[5] The trial court held a hearing on the motion on September 20, 2018. Child Advocate appeared at the hearing,[6] along with counsel for the Commonwealth and Segarra. D.G. and the Commonwealth opposed the motion to compel based on the privileged

---

[2] The Horsham Clinic is a mental health treatment facility, which has inpatient and partial hospitalization programs for children and adolescents. *See* N.T., 9/20/2018, at 3-4.

[3] *See* N.T., 9/20/2018, at 10. The subpoena does not appear in the certified record.

[4] According to the Commonwealth, it turned the records over to Child Advocate, and they are no longer in the Commonwealth's possession. Commonwealth's Brief at 2, *citing* N.T., 9/20/2018, at 11-12, 42.

[5] *See* Certified Docket Entries, 9/14/2018. The motion to compel does not appear in the certified record. The certified docket also indicates the Commonwealth filed a motion *in limine* that same date, but similarly, it is not contained in the certified record before us.

[6] Yu-Qing (Jane) Kim, Esquire appeared at the September 20, 2018 hearing. On August 1, 2019, Attorney Kim withdrew her appearance in this Court, and Barry Kassel, Esquire, entered his appearance as counsel and guardian *ad litem* for D.G.

status of D.G.'s mental health records. Segarra argued that based on his constitutional right to confrontation, he was entitled to know what D.G. disclosed during the course of her treatment at the Horsham Clinic to determine whether it was consistent with other discovery in the case. The trial court agreed that D.G.'s mental health records are privileged under the Mental Health and Procedures Act (MHPA), 50 P.S. §§ 7101-7116, and expressed concern that Segarra was on a "fishing expedition to find inconsistent statements." N.T., 9/20/2018, at 25, 39-41. However, the trial court concluded that because the Horsham Clinic had already disclosed the records, they were no longer subject to the same level of protection. *Id.* at 40. The trial court orally ordered Child Advocate to review D.G.'s mental health records for impeachment evidence and to report her findings to the trial court. *Id.* at 39-41. Further, the trial court left the door open to a possible *in camera* review by the trial judge, who stated the following: "I may do an *in camera* review myself and see whether or not I agree [with Child Advocate]." *Id.* at 44; *see also id.* at 41. Child Advocate stated her opposition to the trial court's order, and on October 18, 2018, she filed the instant appeal on behalf of D.G.

The trial court held a status hearing on November 2, 2018, at which Child Advocate and counsel for the parties appeared. Child Advocate explained she filed the instant appeal on behalf of D.G. because, *inter alia*, it required her to violate her ethical duty to represent the interests of her

client, D.G.  N.T., 11/2/2018, at 6.  The trial court conceded it had erred when it ordered Child Advocate to review D.G.'s mental health records for impeachment evidence and to report her findings to the trial court.  ***Id.*** at 6-7, 13, 16-18; ***see also id.*** 23 ("Just so we're perfectly clear as to [Child Advocate's] ethical issue, I'm not going to argue with you on that. … That was my mistake.  I'll be man enough to say, I made a mistake.").  Nevertheless, the trial court did not withdraw its September 20, 2018 order.  Instead, the trial court indicated it would "wait to see what [the Superior Court] say[s]."  ***Id.*** at 18; ***see also id.*** at 23 ("We'll just wait until we get a response [from the Superior Court].").

The trial court did not order D.G. to file a statement pursuant to Pa.R.A.P. 1925(b), but it did issue an opinion pursuant to Rule 1925(a) on January 25, 2019.  In its opinion, the trial court set forth relevant statutory and case law, but in analyzing the merits of D.G.'s issues, did not make any determinations; rather, it asked this Court for guidance.  ***See*** Trial Court Opinion, 1/25/2019, at 11.

On appeal, D.G. claims her mental health records from the Horsham Clinic are absolutely privileged and not subject to *in camera* review.[7]  Specifically, D.G. raises four issues for our review.

_____

[7] The Commonwealth filed a brief in this appeal, arguing this Court should reverse the trial court's September 20, 2018 order because D.G.'s mental health records are privileged and not subject to disclosure or *in camera*
*(Footnote Continued Next Page)*

1. Did the trial court err when it ordered [] Child Advocate to review [D.G.'s] privileged and confidential mental health records for inconsistent statements and report her findings to the trial court with the intention to possibly turn the statements [over] to [Segarra] as impeachment evidence against [D.G.]?

2. Were [D.G.'s] psychiatric records from her inpatient stay at the Horsham Clinic protected under 42 Pa.C.S.[] § 5944 and the Mental Health Procedures [*sic*] Act under 50 P.S. § 7111[,] thereby precluding the trial court and any other party from reviewing [D.G.'s] privileged and confidential mental health records?

3. Did Horsham Clinic's error in sending [D.G.'s] mental health records to the Commonwealth without [D.G.'s] consent and knowledge waive [D.G.'s] privilege?

4. Would [Segarra's] rights of confrontation and due process be violated if [] Child Advocate, in possession of privileged and confidential mental health records that are statutorily protected from disclosure, did not provide these records to the trial court for review?

D.G.'s Brief at 4-5.

## APPEALABILITY

Preliminarily, we must determine whether the order from which D.G. appeals is appealable, because appealability implicates our jurisdiction. ***In the Interest of J.M.***, 219 A.3d 645, 650 (Pa. Super. 2019). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary." ***Id.*** (citation and internal quotation marks omitted). In order to be appealable, the order must be: (1) a final order,

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

review. Segarra also filed a brief in this Court, arguing that the records at issue are subject to *in camera* review by the trial court.

Pa.R.A.P. 341-42; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S. § 702(a)-(b); Pa.R.A.P. 311-12; or (3) a collateral order, Pa.R.A.P. 313.[8]

"The courts of Pennsylvania have uniformly held that, if an appellant asserts that the trial court has ordered him [or her] to produce materials that are privileged, then Rule 313 applies." *Farrell v. Regola*, 150 A.3d 87, 95 (Pa. Super. 2016), *citing* *Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1016 n.1 (Pa. Super. 2015) ("When a party is ordered to produce materials purportedly subject to a privilege, we have jurisdiction under Pa.R.A.P. 313…."), *Ben v. Schwartz*, 729 A.2d 547, 549 (Pa. 1999) (holding that when a trial court refuses to apply a claimed privilege, the decision is appealable as a collateral order), and *Commonwealth v. Harris*, 32 A.3d 243, 248 (Pa. 2011) (distinguishing federal law and reaffirming Pennsylvania law that "orders overruling claims of privilege and requiring

---

[8] Pa.R.A.P. 313 provides as follows.

> **(a) General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

> **(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

disclosure are immediately appealable under Pa.R.A.P. 313"). Based on the foregoing, it is clear that this order is appealable as a collateral order.

We next address the appealability of the trial court's oral order issued at the September 20, 2018 hearing. No written order memorializing the oral order appears in the certified record, but the certified docket contains the following entry on September 20, 2018: "Order Granting Motion in *Limine*[.] Motion to have Child Advocate review the victims [*sic*] Medical Records is granted." Docket Entry, 9/20/2018; **see** Pa.R.A.P. 301(a)(1) (requiring order of court be entered upon docket in lower court in order to be appealable); Pa.R.Crim.P. 113(C)(4) (requiring docket entries to include "notations concerning motions made orally or orders issued orally in the courtroom when directed by the court").

Neither Segarra nor the Commonwealth has challenged the lack of a written order. Although there is no explanation as to why the trial court did not file a written order, the trial court clearly ordered Child Advocate to review D.G.'s mental health records and entered it on the docket. N.T., 9/20/2018, at 40; Docket Entry, 9/20/2018.

"In some instances, oral orders, made on the record, need not be filed or entered on the docket in order to be valid." **Jackson v. Hendrick**, 746 A.2d 574, 576 (Pa. 2000) (plurality) (citations omitted). In **Jackson**, our Supreme Court considered the propriety of a trial court's unequivocal, on-the-record, oral vacatur while it took a motion for reconsideration under

advisement. Ultimately, the Court concluded that the oral order had legal effect. *Id.* at 577. A plurality of our Supreme Court recognized that

> litigants must be able to rely on representations made by the court, and it would be inequitable and detrimental to the functioning of the judicial system if such on-the-record representations could not be trusted. The efficient resolution of disputes requires that litigants be able to rely on oral representations and orders of court, rather than be forced to treat such matters as merely tentative and unreliable while awaiting the filing of written orders.

*Id.*

We conclude that the case here is one of those instances where the trial court's oral order is valid despite the lack of a filed written order. The trial court's oral order at the September 20, 2018 hearing was unequivocal and on the record, it appears on the docket, and none of the parties challenges the lack of a written order. Child Advocate acted in good faith reliance on the trial court's oral representation that the trial court was ordering her to review D.G.'s medical records and report to the trial court any impeachment evidence. Not permitting D.G. to appeal collaterally her claim of privilege now and requiring her to wait until the trial court files a written order following remand would cause needless delay and disrupt the efficient resolution of Segarra's criminal proceedings and the issue of privilege of D.G.'s mental health records. *See id.* ("[E]quity enjoys flexibility to correct court errors that would produce unfair results."); *see also Pittsburgh Action Against Rape v. Dep't of Public Welfare*, 120 A.3d 1078, 1080 (Pa. Cmwlth. 2015) (concluding administrative law judge's

oral ruling, which denied sexual assault counselor's motion to quash subpoena on ground it sought disclosure of privileged communications with victim, was an appealable collateral order); ***Commonwealth v. Hunt***, 220 A.3d 582, 590 n.6 (Pa. Super. 2019) ("This Court is not bound by the decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate.") (quoting ***Petow v. Warehime***, 996 A.2d 1083, 1088 n.1 (Pa. Super. 2010)).

## STATUTORY PRIVILEGE

Having determined that we have jurisdiction over this appeal, we now turn to D.G.'s issues, beginning with statutory privilege. D.G. contends that disclosure of her mental health records is barred by section 7111 of the MHPA, 50 P.S. § 7111, and section 5944 of the Judicial Code, 42 Pa.C.S. § 5944. The privilege asserted is codified, and thus, "the interpretation of a statute is a question of law, resulting in a standard of review that is *de novo* and a scope of review that is plenary." ***Farrell***, 150 A.3d at 96 (citation omitted).

> Even though Pennsylvania courts disfavor privileges since they obstruct the ability to ascertain the truth, we will faithfully adhere to constitutional, statutory, or common law privileges. If the legislature has considered the interests at stake and has granted protection to certain relationships or categories of information, the courts may not abrogate that protection on the basis of their own perception of public policy unless a clear basis for doing so exists in a statute, the common law, or constitutional principles. This court does not have the power to

order disclosure of materials that the legislature has explicitly directed be kept confidential.

*Id.* at 97 (citations and quotation marks omitted).

We first examine whether D.G.'s mental health records are protected by the MHPA, keeping in mind that the MHPA is to be strictly construed. ***Commonwealth v. Moyer***, 595 A.2d 1177, 1179 (Pa. Super. 1991). Section 7103 of the MHPA specifies that "[t]his act establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons." 50 P.S. § 7103. Section 7103.1 defines "inpatient treatment" as "[a]ll treatment that requires full or part-time residence in a facility." ***Id.*** § 7103.1 "Facility" is defined as "[a] mental health establishment, hospital, clinic, institution, center, day care center, base service unit, community mental health center, or part thereof, that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients." ***Id.***

Section 7111 of the MHPA "mandates that all documentation concerning persons in treatment be kept confidential, in the absence of patient consent, except in four limited circumstances." ***Zane v. Friends Hosp.***, 836 A.2d 25, 31 (Pa. 2003); ***see also In re Fortieth Statewide Investigating Grand Jury***, 220 A.3d 558, 566-67 (Pa. 2019). Section 7111 provides as follows.

(a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;

(2) the county administrator, pursuant to [50 P.S. § 7110];

(3) a court in the course of legal proceedings authorized by this act; and

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent. This shall not restrict the collection and analysis of clinical or statistical data by the department, the county administrator or the facility so long as the use and dissemination of such data does not identify individual patients. Nothing herein shall be construed to conflict with section 8 of the act of April 14, 1972 (P.L. 221, No. 63), known as the "Pennsylvania Drug and Alcohol Abuse Control Act."

50 P.S. § 7111(a) (footnotes omitted).

Instantly, there is no dispute that the Horsham Clinic is a "facility" within the meaning of the MHPA. Next, Child Advocate stated at the September 20, 2018 hearing that D.G. received inpatient treatment at the Horsham Clinic. Trial Court Opinion, 1/25/2019, at 10, *citing* N.T., 9/20/2018, at 8. Thus, the MHPA applies.[9]

---

[9] Segarra contends in his brief that the MHPA is inapplicable to the Horsham Clinic because it is a "partial hospitalization program." Segarra's Brief at 11 n.4. He argues that because "patients are able to return home after

*(Footnote Continued Next Page)*

- 11 -

Having determined that the MHPA applies, we must examine whether any of the exceptions enumerated in subsection 7111(a) applies.

> In construing [s]ection 7111, our [Supreme] Court determined that, by its clear and unambiguous terms, disclosure was allowed only in certain limited enumerated instances, and only to parties designated by the statute. … Apart from these express exceptions, our Court held that disclosure is permitted to third parties **only** where the patient has given his or her written consent:
>
> > The unambiguous terms contained in the provision regarding the confidentiality of medical records leaves little room for doubt as to the intent of the Legislature regarding this section. …"[A]ll documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone." 50 P.S. § 7111(a). The

_(Footnote Continued)_ _____

treatment" in a partial hospitalization program, it is akin to a voluntary outpatient program and thus, the MHPA does not apply. _Id._ However, as noted _supra_, the MHPA defines "inpatient treatment" as "[a]ll treatment that requires full or **part-time** residence in a facility." 50 P.S. § 7103.1 (emphasis added).

The Commonwealth states in its brief that the trial court did not make any finding of fact about the nature of D.G.'s treatment, but "to the extent D.G. received inpatient or involuntary treatment at Horsham [Clinic]," it agrees D.G.'s records are protected by the MHPA. Commonwealth's Brief at 8 n.2. As noted, Child Advocate indicated at the September 20, 2018 hearing that D.G. received inpatient treatment at the Horsham Clinic. N.T., 9/20/2018, at 8. The trial court adopted this fact in its opinion when it noted that D.G. "was an inpatient at Horsham." Trial Court Opinion, 1/25/2019, at 10. Further, D.G. repeatedly refers to her inpatient treatment at the Horsham Clinic throughout her brief. D.G.'s Brief at ii, 4-5, 17, 22, 25, 27, 29, 32. There is nothing in the record to indicate D.G.'s treatment was anything other than inpatient. Regardless, as discussed _infra_, all confidential communications made and information given by D.G. to her entire mental health treatment team at the Horsham Clinic are absolutely privileged under section 5944 of the Judicial Code, 42 Pa.C.S. § 5944.

> provision applies to **all** documents regarding one's treatment, not just medical records. Furthermore, the verbiage that the documents "**shall** be kept confidential" is plainly not discretionary but mandatory in this context—it is a requirement. The release of the documents is contingent upon the person's written consent and the documents may not be released "**to anyone**" without such consent. The terms of the provision are eminently clear and unmistakable and the core meaning of this confidentiality section of the [MHPA] is without doubt—there shall be no disclosure of the treatment documents to anyone.

> ***Zane***[, 836 A.2d at 31-32] (emphasis original). Consequently, our [Supreme] Court ruled that, because the disclosure of mental health treatment records for purposes of a civil proceeding was not one of the permissible disclosures set forth in [s]ection 7111, and because the patient had not given written consent for their disclosure, the trial court's order compelling their disclosure was legally erroneous and could not be enforced.

***In re Fortieth Statewide Investigating Grand Jury***, 220 A.3d at 566-67 (emphasis in original).

Similarly here, none of the enumerated exceptions set forth in subsection 7111(a) applies, and there is no question that D.G. did not give written consent for the disclosure of her mental health records.[10] The documents are not sought by one treating the person or by a county administrator, nor is there any suggestion that any treatment was undertaken in a federal agency. ***See*** 50 P.S. § 7111(a)(1), (2), (4).

---

[10] Subject to exceptions not relevant here, a minor age 14 or older controls the release of the minor's mental health treatment records and information. ***See*** 35 P.S. § 10101.2(d); ***see also*** 35 P.S. § 10101.1 (minors' consent to mental health treatment).

- 13 -

Further, disclosure to a court is not permitted in criminal proceedings under the MHPA; rather, it is **only** permitted where the legal proceedings are authorized by the MHPA. 50 P.S. § 7111(a)(3). In **Moyer**, this Court interpreted subsection 7111(3) and explained as follows.

> A strict construction of Section 7111 reveals that all documents concerning persons in treatment are to be kept confidential and may not be released or disclosed to anyone, absent the patient's written consent, with certain exceptions. […] The third exception to the privilege of confidentiality conferred by the MHPA on a patient's records allows a court to review the records **in the course of legal proceedings authorized by the MHPA**. 50 P.S. § 7111(3).
>
> The unambiguous language of section 7111(3) leads us to conclude that a patient's inpatient mental health treatment records may be used by a court **only** when the legal proceedings being conducted are **within the framework** of the MHPA, that is, involuntary and voluntary mental health commitment proceedings. **See** 50 P.S. § 7103 (MHPA establishes the rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons). We can find no language within the act itself which includes criminal proceedings within the framework of the act, nor can we find any caselaw in the Commonwealth which supports such a proposition.
>
> ***
>
> [A]bsent any authority to the contrary, we conclude that [a] criminal prosecution [] is not a legal proceeding authorized by the act.

**Moyer**, 595 A.2d at 1179 (some citations omitted; emphasis in original); **see also Zane**, 836 A.2d at 32-33 ("[B]y the clear terms of the statute, disclosure to a court is not permitted in any legal proceedings, but only in those legal proceedings authorized by the [MHPA]. Our review of the

- 14 -

[MHPA] reveals certain legal proceedings that are authorized by the statute, that is, proceedings falling within the confines of the act. These include involuntary emergency treatment, 50 P.S. § 7303; court-ordered involuntary treatment, 50 P.S. § 7304 and § 7305; transfer of persons in involuntary treatment, 50 P.S. § 7306; and voluntary mental health commitment determinations, 50 P.S. § 7204 and § 7206.").

Similarly here, because "this exception to the otherwise broad protection of confidentiality of documents only encompasses legal proceedings authorized by the [MHPA]" and not criminal proceedings, this exception does not serve as a basis to permit the disclosure of D.G.'s mental health records to the court in the criminal proceeding against Segarra. *Moyer*, *supra*; *Zane*, *supra*.

Thus, in this case, by the plain language of the MHPA, **all** documents relating to D.G.'s mental health treatment at the Horsham Clinic **shall** be kept confidential and cannot be released to anyone absent D.G.'s written consent. Accordingly, the trial court's order requiring Child Advocate to review D.G.'s mental health records and disclose any impeachment evidence to the trial court, and possibly to Segarra and the Commonwealth, was erroneous. Likewise, it was error for the trial court to leave the door open to a possible *in camera* review by the trial judge, as the MHPA prohibits the release of D.G.'s mental health records to **anyone** without her written consent. **See Zane**, 836 A.2d at 33 (holding trial court's order compelling

hospital to produce, for *in camera* inspection, mental health records of defendant in negligence action was clearly erroneous under MHPA).

Because the MHPA protects **all** documents from disclosure, a detailed discussion of whether the psychiatrist/psychologist-patient privilege, codified in section 5944 of the Judicial Code, 42 Pa.C.S. § 5944, applies to D.G.'s treatment at the Horsham Clinic is not necessary. **See Moyer**, 595 A.2d at 1180 (concluding, after finding defendant's records privileged under the MHPA, it was unnecessary to discuss whether records were also privileged under section 5944); **Gates v. Gates**, 967 A.2d 1024, 1029 (Pa. Super. 2009) ("[W]e observe that 50 P.S. § 7111(a) is a broad provision that applies to all of the records concerning [an individual's] mental health treatment.") (citation and footnote omitted).

We point out, however, that the psychiatrist/psychologist-patient privilege is absolute and the statute contains no exceptions for disclosure. **Commonwealth v. Kyle**, 533 A.2d 120, 125 (Pa. Super. 1987); 42 Pa.C.S. § 5944. The privilege "is designed to protect confidential communications made and information given by the client to the psychotherapist in the course of treatment, but does not protect the psychotherapist's own opinion, observations, diagnosis, or treatment alternatives." **Farrell**, 150 A.3d at 97-98 (citation and internal quotation marks omitted). Segarra is attempting to uncover statements D.G. made during the course of her

mental health treatment at the Horsham Clinic, "which falls squarely within the parameters of the privilege." *Id.* at 98.

The privilege applies not only to psychiatrists and psychologists, but to any member of a patient's treatment team. *Id.* at 100, *quoting* **Commonwealth v. Simmons**, 719 A.2d 336, 343 (Pa. Super. 1998) ("[A]ny oral communication by [patient] in private to **any** member of the treatment team and used by the team for the purpose of psychotherapeutic evaluation is privileged. Additionally, any reference to such a communication in [the facility's] files is privileged as well.") (emphasis in original).

Moreover, "[i]n cases where the [section] 5944 privilege has been found to apply, case law has precluded material from being subjected to even *in camera* review by the trial courts[.]" **Simmons**, 719 A.2d at 341; *see also Kyle*, 533 A.2d at 131 ("Subjecting the confidential file to *in camera* review by the trial court (as well as the appellate courts and staff members) would jeopardize the treatment process and undermine the public interests supporting the privilege. Simply stated, an absolute privilege of this type and in these circumstances requires absolute confidentiality.").

Accordingly, any oral communication by D.G. in private to **any** member of her treatment team at the Horsham Clinic and used by the team for the purpose of psychotherapeutic evaluation is privileged, as well as any

reference to such a communication in Horsham Clinic's files.[11]  **Farrell**, **supra**; **Simmons**, **supra**.  Thus, the trial court erred in ordering Child Advocate to review D.G.'s mental health records and disclose any impeachment evidence to the trial court and possibly to Segarra and the Commonwealth.  Equally, the trial court erred when it left the door open to a possible *in camera* review by the trial judge, as the section 5944 privilege is absolute and contains no exceptions for disclosure.  **Farrell**, 150 A.3d at 101 (reversing order requiring psychological treatment records be turned over to trial court for *in camera* review); **Simmons**, 719 A.2d at 341, 344 (holding section 5944 is an absolute privilege from disclosure, including *in camera* review); **Kyle**, 533 A.2d at 123-25 (same).

### WAIVER

Having concluded that D.G.'s mental health records are protected by the MHPA and not subject to disclosure under any of the enumerated exceptions in subsection 7111(a), we examine whether D.G. waived her privilege.  As noted *supra*, at the September 20, 2018 hearing, the trial court concluded that because the Horsham Clinic had already disclosed the records to the Commonwealth, albeit in error, the records were no longer subject to the same level of protection.  N.T., 9/20/2018, at 40; **see also**

---

[11] To the extent the trial court determined that section 5944 only protects communications made to a licensed psychiatrist or psychologist, this was error.  **See** Trial Court Opinion, 1/25/2019, at 9.

N.T., 11/2/2018, at 14; Trial Court Opinion, 1/25/2019, at 7-8. Neither the Commonwealth nor Segarra disputes that the Horsham Clinic disclosed D.G.'s mental health records without her consent, or that the Commonwealth is no longer in possession of the records.

"As a general matter, once it is established that records are privileged from disclosure to third parties, the burden shifts to the party seeking disclosure to establish that an exception to the privilege exists which would allow the disclosure." *In re Fortieth Statewide Investigating Grand Jury*, 220 A.3d at 568 (citation omitted). Thus, the burden rests with Segarra to demonstrate that D.G. waived the privilege conferred by statute.

As our Supreme Court recognized in *Zane*,

> [t]he importance of confidentiality cannot be overemphasized. To require the [h]ospital to disclose mental health records during discovery would not only violate [the patient's] statutory guarantee of confidentiality, but would have a **chilling effect** on mental health treatment in general. The purpose of the [MHPA] of seeking 'to assure the availability of adequate treatment to persons who are mentally ill,' 50 P.S. § 7102, would be **severely crippled** if a patient's records could be the subject of discovery in a panoply of possible legal proceedings. Moreover, to release such documents for review during discovery, only to have an appellate court reverse such decision on appeal, would result in the confidential nature of the records being forever lost.

*Zane*, 836 A.2d at 34 (emphasis added); *Kyle*, 533 A.2d at 126 ("Because the information revealed by the patient [during mental health treatment] is extremely personal, the threat of disclosure to outsiders may cause the patient to hesitate or even refrain from seeking treatment.").

Our Supreme Court addressed the issue of waiver of privileged mental health records under section 7111 in *In re Fortieth Statewide Investigating Grand Jury*, *supra*. There, our Supreme Court observed that

> given the strong legislative policy reflected in [s]ection 7111 [of the MHPA] to keep mental health treatment records confidential, implicit waiver of this privilege is strongly disfavored and has been recognized by our Court in only one circumstance – where a plaintiff initiated a civil action and sought to use [s]ection 7111 to shield disclosure of mental health treatment records, which he could reasonably have foreseen would be relevant given that his mental health was directly implicated by his cause of action. *Octave*[ *ex rel. Octave v. Walker*, 103 A.3d 1255 (Pa. 2014)]. What was critical to our disposition in that case, however, was the fact that the individual asserting the privilege had placed his mental health at issue by initiating the case, and, thus, considerations of fundamental fairness were implicated, given that our Court did not want to countenance using this privilege as an "offensive" shield for a party to gain a tactical advantage in civil litigation. *Octave*, 103 A.3d at 1263.

*Id.* at 568 (emphasis omitted).

These considerations are not present here, as this matter is not a civil case, D.G. did not initiate the criminal case against Segarra, and when D.G. sought mental health treatment as a sexual assault complainant, she could not have reasonably foreseen that the records of that treatment would be made available to her alleged perpetrator. *See id.*[12] As our Supreme Court

_____

[12] We further note that under the statutory sexual assault counselor privilege, a sexual assault counselor is prohibited from disclosing a sexual assault victim's confidential communications to the counselor without the victim's written consent, and is prohibited from consenting to be examined

*(Footnote Continued Next Page)*

held in ***Fortieth Statewide Investigating Grand Jury***, we likewise "decline to extend the principle of implicit waiver recognized in ***Octave*** to circumstances such as those presented by the case at bar." ***Id.*** Thus, the Horsham Clinic's mistake in disclosing D.G.'s privileged mental health records to the Commonwealth is not an implied waiver of D.G.'s privilege.[13] To hold otherwise would have a "chilling effect on mental health treatment in general" and would "severely cripple" the legislative purpose of ensuring

---
*(Footnote Continued)* ───────────

in any court or criminal proceeding. 42 Pa.C.S. § 5945.1(b). "The privilege created by 42 Pa.C.S. § 5945.1 is an absolute privilege, which is not overcome even by the constitutional rights of a criminal defendant." ***V.B.T. v. Family Services of Western Pennsylvania***, 705 A.2d 1325, 1329 (Pa. Super. 1998) (citations and footnote omitted). While the record does not indicate that D.G.'s mental health records would fall under this privilege, the sexual assault counselor privilege is further indication of our legislature's manifest purpose of shielding any confidential communications made by D.G. relating to her sexual assault in the course of her treatment at the Horsham Clinic.

[13] We find inapposite the trial court's reliance on ***Commonwealth v. Weiss***, 81 A.3d 767 (Pa. Super. 2013), to support its position that the Horsham Clinic's erroneous disclosure of D.G.'s mental health records to the Commonwealth can "pierce" the privilege and be viewed as an implicit waiver of privilege by D.G. Trial Court Opinion, 1/25/2019, at 10.

Without question, treating a mental health facility's disclosure of a patient's mental health records without the patient's consent as a waiver of the patient's privilege would wholly contradict the "the manifest legislative policy to shield confidential mental health treatment records from public view embodied in [s]ection 7111." ***Fortieth Statewide Investigating Grand Jury***, 220 A.3d at 568. To allow D.G.'s privilege to be waived because her mental health records ended up in the Commonwealth's possession through Horsham Clinic's mistake would eviscerate any privilege protected by statute, and to hold otherwise "would be repugnant to the notion of privacy embodied in [section] 7111." ***Id.*** at 569.

confidentiality to those who seek it, including victims of sexual assault. **See**

**Zane**, **supra**. Accordingly, Segarra has not met his burden of

demonstrating D.G. waived the privilege conferred by the MHPA.

### RIGHTS TO CONFRONTATION AND DUE PROCESS

Lastly, on appeal, D.G. and the Commonwealth contend D.G.'s

privilege does not yield to Segarra's constitutional right to confrontation,

while Segarra maintains that the trial court must balance his right to conduct

effective cross-examination of D.G. against the privilege. D.G.'s Brief at 42-

44; Commonwealth's Brief at 13-14; Segarra's Brief at 13.

"The confrontation clause guarantees an accused the right 'to be

confronted with the witness against him; [and] to have compulsory process

for obtaining witnesses in his favor.'" **Kyle**, 533 A.2d at 123, *quoting* U.S.

Const. Amend. VI.[14, 15]

> The [federal] Confrontation Clause does not constitutionally
> guarantee access to pre-trial discovery. The right to
> confrontation is a trial right. A defendant does not have a right
> to discover any and all material potentially useful for impeaching
> a witness. "Generally speaking, the Confrontation Clause
> guarantees an **opportunity** for effective cross-examination, not
> cross-examination that is effective in whatever way, and to

---

[14] "The Confrontation Clause is made applicable to the states by the Fourteenth Amendment of the United States Constitution." **Kyle**, 533 A.2d at 123 n.2 (citation omitted).

[15] This right is also secured by our state constitution. Pa. Const. Art. 1 § 9. D.G., the Commonwealth, and Segerra all fail to indicate in their briefs whether their arguments are advanced under the federal or state constitutions, or both.

whatever extent, that the defense might wish." **Delaware v. Fensterer**, 474 U.S. 15, 20 [] (1985) (*per curiam*) (emphasis supplied) (citation omitted). Thus, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these [forgetfulness, confusion, or evasion] infirmities through cross-examination...." **Id.** at 22 [].

**Commonwealth v. Herrick**, 660 A.2d 51, 60 (Pa. Super. 1995) (some citations omitted). There is no indication in the record here that Segarra will not have a full and fair opportunity to cross-examine D.G. and thus, we do not find denying him access to D.G.'s mental health records violates his right to confrontation.

"While the Confrontation Clause does not attach, *per se*, to pre-trial discovery requests," "[d]ue process demands that materially exculpatory evidence in the hands of a prosecutor be turned over to the defense." **Id.**, *citing* **Brady v. Maryland**, 373 U.S. 83 (Pa. 1963). "This right, however, does not mean that a defendant has unfettered access to files not in his possession." **Id.** at 61 (citation omitted).

Segarra's right to access is dependent upon whether the information is protected by statutory privilege. Our research has not uncovered any published opinions which address whether a criminal defendant's constitutional rights of confrontation and due process are violated by a denial of access to records under the MHPA, but courts of this state have examined whether a criminal defendant accused of sexual offenses is entitled to access to the alleged victim's records, and they have held

repeatedly that such constitutional rights are not violated when the records are statutorily privileged. **See e.g.**, **Kyle**, 533 A.2d 120 (holding criminal defendant's federal constitutional rights are not violated by denial of access to statutorily protected records under section 5944 psychiatrist/psychologist-patient privilege); **Kennedy**, 604 A.2d at 1047 (holding criminal defendant's state constitutional rights are not violated by denial of access to statutorily protected records under section 5944 psychiatrist/psychologist-patient privilege); **Commonwealth v. Smith**, 606 A.2d 939, 942 (Pa. Super. 1992) (same); **Commonwealth v. Counterman**, 719 A.2d 284, 295 (Pa. 1998) ("The statutory privilege set forth in Section 5944 is not outweighed by either a defendant's Sixth Amendment right to cross-examine a witness or his right to due process of law.") (citations omitted); **Commonwealth v. Patosky**, 656 A.2d 499, 502-03 (Pa. Super. 1995) (citing numerous cases in which a criminal defendant's constitutional rights to confrontation and due process must yield to privilege, and holding that the trial court's refusal to allow defendant's attorney to conduct *in camera* review of sexual assault victim's psychiatric records under section 5944 did not violate his constitutional rights to confrontation, compulsory process, and due process); **Commonwealth v. Wilson/Aultman**, 602 A.2d 1290, 1296 (Pa. 1992) (plurality)[16] (holding sexual assault counselor privilege, 42 Pa.C.S. § 5945.1,

_____

[16] Chief Justice Nix's plurality opinion in **Wilson**/**Aultman** was joined by
*(Footnote Continued Next Page)*

- 24 -

does not violate criminal defendant's federal or state constitutional rights);

***V.B.T.***, 705 A.2d at 1329 ("The privilege created by 42 Pa.C.S. § 5945.1 is

an absolute privilege, which is not overcome even by the constitutional

rights of a criminal defendant.").[17, 18]

---

*(Footnote Continued)* ───────────

Justices Flaherty and Cappy; Justice Larsen filed a concurring opinion joined by Justice Papadakos; Justice Zappala dissented; and Justice McDermott did not participate. The concurring opinion agreed with the lead opinion that the statutory sexual assault counselor privilege was absolute.

[17] In ***Commonwealth v. T.J.W.***, this Court noted that "even in cases which adopt the 'absolute privilege' terminology, there is a recognition, often expressly, that the disposition of a claim of privilege involves an impartial assessment of the competing claims" and suggested section 5944 may not shield the victim's mental health records from disclosure under the specific facts of that case. 114 A.3d 1098, 1104 (Pa. Super. 2015). However, the Court held the victim waived her claim of privilege under section 5944 because she had agreed to a stipulated order which required her to turn over her records to the trial court for *in camera* review, and because she did not assert privilege until four and one-half months after she agreed to the order. ***Id.*** at 1103. In contrast here, and as discussed *supra*, D.G. did not consent to or waive disclosure of her mental health records. D.G. also invoked her privilege immediately upon learning Segerra was seeking disclosure.

[18] A privilege recognized at common law can yield to a criminal defendant's constitutional rights. ***See Commonwealth v. Lloyd***, 567 A.2d 1357 (Pa. 1989), *superseded by statute*, 42 Pa.C.S. § 5944 (holding a common law psychotherapist privilege gives way to criminal defendant's constitutional right to confrontation); ***In the Matter of Pittsburgh Action Against Rape (PAAR)***, 428 A.2d 126 (Pa. 1981), *superseded by statute*, 42 Pa.C.S. § 5945.1 (declining to expand common law privilege to recognize an absolute testimonial privilege for all communications between rape victims and rape crisis center counselors).

"At the time ***Lloyd*** was decided, statutory protection now afforded to psychotherapeutic records was not in effect. Therefore, the ***Lloyd*** Court was not required to analyze whether the defendant's right to these records was subject to any restriction." ***Smith***, 606 A.2d at 942. Since then, such
*(Footnote Continued Next Page)*

The rationale underlying these cases is that the legislature, in enacting a statutory privilege, has acknowledged the significance of the confidentiality interest which it addresses and intended to afford statutory protection to that interest. In **Kyle**, we explained the following.

> Having reviewed the language of the statutory privilege enacted by our legislature and having given consideration to the public policies underlying the absolute privilege as well as the relevant cases in this and other jurisdictions, we find that the interests protected by the privilege are substantial. We are, of course, cognizant of the heavy weight afforded to [a criminal defendant's] interest in disclosure of the victim's file. Nonetheless, in weighing the public interests protected by shielding the file with those advanced by disclosure, we conclude that the balance tips in favor of non-disclosure. Nor do we believe that our decision today will unduly infringe on the rights of the accused. First, we note that as a matter of constitutional law, our courts have upheld testimonial privileges which bar a criminal defendant from obtaining or using confidential communications. **See Washington v. Texas**, 388 U.S. 14, 23 n.21, [] (1967); **Commonwealth v. Sims**, [] 521 A.2d 391, 395 ([Pa.] 1987). Here, the privilege only limits access to statements made during the course of treatment by the psychologist. It does not foreclose all lines of defense questioning. Likewise, the privilege does not unfairly place the defense in a disadvantageous position; like the defense, the prosecution does not have access to the confidential file and, thus, cannot use the information to make its case.

**Kyle**, 533 A.2d at 129; **see also Wilson/Aultman**, 602 A.2d at 1298

("[T]he existence of a statutory privilege is an indication that the legislature

*(Footnote Continued)* ───────────────

records have been afforded statutory protection, the psychiatrist/psychologist-patient privilege codified at 42 Pa.C.S. § 5944.

Likewise, "in response to the [Pennsylvania Supreme Court]'s decision in **PAAR**[, ] the Legislature enacted the absolute privilege for communications between clients and rape crisis counselors at 42 Pa.C.S. § 5945.1." **Kennedy**, 604 A.2d at 1045.

acknowledges the significance of a particular interest and has chosen to protect that interest."); **Kennedy**, 604 A.2d at 1046 (recognizing that the section 5944 privilege "is based on the state's interest in promoting successful therapeutic treatment and in protecting the fundamental right of all its citizens to the privacy of their most intimate communications").

As our Supreme Court has recognized, "[i]t should be readily apparent that the general powers of courts do not include the power to order disclosure of materials that the legislature has explicitly directed be kept confidential." **Commonwealth v. Moore**, 584 A.2d 936, 940 (Pa. 1991) (holding Disease Prevention and Control Law protected confidentiality of criminal defendant's health records, which were not subject to disclosure under statute, where Commonwealth sought disclosure to determine if defendant was infected with gonorrhea at time of alleged rape of minor victim who was also diagnosed with gonorrhea).

Utilizing the same rationale, we arrive at the same conclusion: a criminal defendant's constitutional rights yield to the statutory privilege set forth in the MHPA. In creating the statutory privilege therein, the legislature obviously concluded there is a compelling interest in shielding mental health treatment records from disclosure except in limited circumstances. 50 P.S. § 7111; **see Zane**, **supra**; **In re Fortieth Statewide Investigating Grand Jury**, **supra**. Notably, the legislature did not create an exception for disclosure in all legal actions or other proceedings. As **Moyer**, **supra**, made

clear, disclosure in criminal proceedings is not among the MHPA's exceptions.[19]

The very existence of the unambiguous legislation of the MHPA signifies the strength of the privilege, and the legislature clearly determined that disclosure of mental health treatment records in legal actions or other proceedings is only relevant in "involuntary and voluntary mental health commitment proceedings." **Moyer**, **supra**, at 1179. The "clear mandate of the statutory privilege" under the MHPA "is not overcome even by the constitutional rights of a criminal defendant." **See Wilson**, **supra**, at 295; **V.B.T.**, **supra**, at 1329.

---

[19] The trial court in its opinion, along with D.G., the Commonwealth, and Segerra in their briefs, all cite to the United States Supreme Court's ruling in **Pennsylvania v. Ritchie**, 480 U.S. 39 (1987) (plurality). Ritchie was accused of committing rape and other sexual offenses against his minor daughter. Ritchie sought disclosure of the file of Pennsylvania's Children and Youth Services (CYS), the agency which investigated the suspected abuse of the daughter. CYS claimed the records were privileged under Pennsylvania's Child Protective Services Law, 11 Pa.C.S. § 2215 (repealed). The High Court recognized the information was statutorily protected, but a majority of the Court determined that because the statute required CYS to disclose the information when directed by court order, it could not conclude "that the statute prevents all disclosure in criminal prosecutions." **Ritchie**, 480 U.S. at 43-44, 57-58. Thus, Ritchie was entitled to have the trial court review the CYS file to determine whether it contained information material to his criminal defense. **Id.** at 58.

Here, in contrast to **Ritchie**, the language of the MHPA clearly shows that the legislature did not intend for a patient's mental health records to be subject to disclosure in criminal proceedings; the absence of such an exception shows the legislature has chosen to maintain the state's compelling interest in protecting the confidentiality of a patient's mental health records in criminal proceedings.

Thus, based on the foregoing and in accordance with the language of the MHPA and our holding in **Moyer**, D.G.'s mental health records are absolutely privileged under the MHPA in Segarra's criminal proceeding. "[P]sychiatric records [that] are statutorily protected are not subject to discovery." **Smith**, 606 A.2d at 942. Courts do not have "the power to order disclosure of materials that the legislature has explicitly directed be kept confidential." **Moore**, 584 A.2d at 940. Moreover, application of the MHPA does not unfairly place Segarra in a disadvantageous position, because the prosecution will likewise not have access to the contents of D.G.'s records, and thus, cannot use the information to make its case either. **See Kyle**, 533 A.2d at 130.

As the above discussion demonstrates, because D.G.'s mental health records are not subject to exception or discovery under the MHPA, and because D.G. has not consented to the records' disclosure, Segarra's constitutional rights are not violated in protecting the records from disclosure and *in camera* review.

For all of the foregoing reasons, we find D.G.'s mental health records are privileged and cannot be disclosed to anyone, or be subjected to *in camera* review by anyone, without D.G.'s consent.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/10/20</u>