J-S29006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BETH ANN ELLIS | No. 17 MDA 2023 |

Appeal from the Order Entered November 30, 2022
In the Court of Common Pleas of York County
Criminal Division at CP-67-CR-0000067-2022

BEFORE:   MURRAY, J., KING, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.:                    **FILED SEPTEMBER 14, 2023**

The Commonwealth of Pennsylvania appeals from the order granting the oral motion of Beth Ann Ellis (Defendant) requesting extraordinary relief.[1] Upon review, we reverse the trial court's order, reinstate Defendant's convictions, and remand for further proceedings.

---

* Retired Senior Judge assigned to the Superior Court.

[1] No written order appears on the docket. **See generally** Pa.R.A.P. 301(a)(1) ("[N]o order of a court shall be appealable until it has been entered upon the appropriate docket in the trial court."). However, a docket entry on November 30, 2022, includes the notation "Dismissed." Additionally, there are transcripts in the certified record titled "ORDER 11-30-2022." The parties do not challenge the absence of a written order, and the trial court clearly stated its intentions on the record. **See Commonwealth v. Segarra**, 228 A.3d 943, 949-50 (Pa. Super. 2020) (concluding trial court's oral order was valid where parties did not challenge the lack of a written order, and the trial court was unequivocal in stating the order on the record during a hearing).

Defendant worked as a home health care provider and began providing services for Janet Gross in approximately February 2019. In September 2021, Sandra Tome, Gross's stepdaughter and power of attorney, received notification from Gross's bank about an overdrawn account and suspicious activity. Tome changed the locks at Gross's house and notified police. An investigation revealed "many discrepancies and many altered checks[.]" Trial Court Opinion, 2/10/23, at 4. The amounts on several checks made out to Defendant had been altered, and some differed from the amounts noted in Gross's check register. *See id.* (indicating changes from $300 to $600, $290 to $600, and $200 to $800, among others).

Gross passed away in January 2022, during the police investigation. Thereafter, the Commonwealth charged Defendant with forgery, theft by unlawful taking, access device fraud, and receiving stolen property.[2] The Commonwealth withdrew the access device fraud charge prior to trial. In addition, the Commonwealth amended the criminal information to include a charge of theft by deception.[3]

The case proceeded to trial. After the Commonwealth presented its case, and outside the jury's presence, Defendant's counsel made an oral motion for demurrer and directed verdict. N.T., 10/19/22, at 295-96.[4] The

---

[2] *See* 18 Pa.C.S.A. §§ 4101(a)(1), 3921(a), 4106(a)(1)(ii), 3925(a).

[3] 18 Pa.C.S.A. § 3922(a)(1).

[4] Defense counsel did not specify the basis for the request.

- 2 -

trial court denied the motion, stating, "I'm going to allow it to go to the jury at this point. I will deny the motion. The [c]ourt cannot substitute its view as the fact finder, and I am not going to do that here." *Id.* at 296. The jury returned to the courtroom, and Defendant testified in her defense.

The jury found Defendant guilty of theft by deception, and not guilty of forgery, theft by unlawful taking, and receiving stolen property. After the jury returned the verdict, defense counsel orally moved to set aside the verdict, stating, "It is just -- there's no way they can come up with that." N.T., 10/19/22, at 440. The Commonwealth requested the defense file a formal motion, and the trial court agreed:

> I would file a formal motion. I'm going to -- and I will take it -- I will acknowledge that you've made an oral motion. I'm going to direct that you file a written motion within 10 days, and I am going to take it under advisement.

*Id.* at 441. The trial court also stated that the Commonwealth would have an opportunity to respond to Defendant's motion. *Id.* at 443.

The parties reconvened on October 28, 2022, to discuss Defendant's oral motion. Defense counsel explained that after reviewing the Pennsylvania Rules of Criminal Procedure, he believed the case must proceed to sentencing before Defendant could file a motion:

> [Defense Counsel]: That's correct. I made a motion, and Your Honor indicated for me to file it in writing. It was after the verdict was returned and the jury was dismissed, and in going back and looking at the rules, that is the way that works in the federal court but doesn't work that way in the state court. We have to wait until [Defendant has] been sentenced, and then she has ten days from that point to file the motion.

[Assistant District Attorney]: I think that would be the better procedure, as we can request the transcription of the trial so Your Honor would have the benefit of the transcripts as well as the parties in making their respective arguments.

N.T., 10/28/22, at 3 (some capitalization omitted). Following an off-the-record discussion, the trial court scheduled a sentencing hearing:

With regard to this matter, at the time the court had issued an order that [Defense Counsel] needed to follow-up with a written copy of a petition to do a judgment of acquittal. We indicated he was to file a written motion within ten days. Apparently, the rules allow him to file it within ten days of sentencing. That is already scheduled for November 30, 2022, at 11:00 a.m. Therefore, **[Defense Counsel] would have ten days from that date in order to follow-up with a written request. The Commonwealth is on notice so that they will be able to timely respond.**

*Id.* at 3-4 (some capitalization modified; emphasis added).

On November 30, 2022, the parties appeared for the scheduled sentencing hearing. However, rather than proceeding to sentencing, the trial court addressed the oral motion. Defense counsel asked whether he should file a written motion. The Commonwealth reminded the court of the agreement that Defendant would file a written motion and provide the Commonwealth an opportunity to respond. Nevertheless, the trial court granted Defendant's oral motion to overturn the verdict and dismiss the theft by deception charge. *See* N.T., 11/30/22, at 9-10. The trial court generally observed:

[T]he family apparently made a decision to get in-home care. In-home care is very expensive[,] and it is not covered by insurance. ... At the time the decision was made, [Gross] was apparently

ambulatory, but limited. She was extremely overweight[,] and it was difficult to maneuver her from one place to another.

At that time [Gross's stepdaughter, Tome,] was involved in having the power of attorney and assisting in payment of certain expenses. However, shortly thereafter, she stopped being involved in those payments.

N.T., 11/30/22, at 2-3.

The trial court concluded the jury's verdicts were inconsistent, and the evidence did not support the verdict:

It is notable in this case that there was an inconsistent verdict. And we want to differentiate between an inconsistent verdict and a verdict that is against the weight of the evidence.

We will note, specifically, that in this case what is notable about the inconsistent verdict is that there was no indication, based on the evidence, that the checks were signed by anyone other than [Gross]. Even with the bank records and copies of checks that were introduced into evidence, they were all signed by [Gross].

Additionally, there was absolutely no evidence that [Gross] was incompetent, mentally. Therefore, the [c]ourt can make a presumption of competence of [Gross] to sign her own checks. And it would be the Commonwealth's burden to prove she was incompetent to sign her own checks or to know what was on them. No evidence in that regard could be presented.

….

… In this case, again, the Commonwealth was somewhat handicapped by the fact that [Gross] is deceased. We were also struck by the fact that not only did [Tome] stop … being involved in the finances for a period in excess of two years, but we also note that she testified that she wasn't there when the Defendant was there, and that she was there at the house, generally, once per week, in the evening after work.

By the time this case ended[,] the testimony was that [Gross] not only was over 400 pounds, but was bedridden. What

then strikes the [c]ourt is what became … a vacuum of any indication of how [Gross] was being cared for, how her needs were being met, including purchase of food, medicine, adult diapers, or other supplies. There were no credit card records entered, although there was some discussion of a maxed out Discover card. We do appreciate that the neighbors stepped up, but for their care and [Tome] stepping in once a week, there is a vacuum related to how [Gross] was being cared for. Clearly, she was being cared for by the Defendant.

And circumstantial evidence works both ways. In the absolute absence of any evidence that [Gross's] needs, both financial and otherwise, were being met in any way other than by the care of the neighbors and the care of the Defendant, it would be a supreme miscarriage of justice to Monday morning quarterback that care.

The testimony was that this case started when the bank contacted [Tome] regarding an overdrawn account. Given the amount of care that a bedridden 400 pound woman would require, the [c]ourt is not surprised that on her limited income[, Gross's] bank account was overdrawn. What we are surprised about is that her bank account lasted as long as it did.

This [c]ourt does not take this decision lightly. We believe in the jury system. We believe that juries get it right 99.9 percent of the time. And we don't try to guess why juries do what they do. However, there are patter[n]s that the [c]ourt has observed over our years of experience. One is that it is basic human nature to want to protect the elderly and children, and one is that when faced with multiple charges, sometimes they want to do either, well, we will find him not guilty on this, or we will find him guilty on this, and both existed in this case.

Where there is a vacuum of evidence, other than that care was provided by this Defendant and expenses were met by this Defendant, neither the direct nor circumstantial evidence, which was practically non-existent, would be enough to support a verdict of guilty.

*Id.* at 3-7.

The court next reviewed the elements of theft by deception, along with the evidence, or perceived lack thereof, supporting each element. *See id.* at 7-9. In part, the trial court stated, "In the absence of a victim, [Defendant's] testimony was essentially not controverted." *Id.* at 8; *see also id.* at 9 ("While the jury may have inferred something with regard to this, without the victim's testimony, which we understand severely handicapped the Commonwealth in this case, we cannot find that there was any evidence supporting either a deception or reliance by the victim on a deception ….").

Further, the trial court concluded:

> In reviewing all of these elements, specifically, the complete lack of any reliable circumstantial evidence or any direct evidence as to two of the three elements, and what the [c]ourt views as Monday morning quarterbacking of the care provided by the Defendant, this is almost the definition of why the [c]ourt has the ability to do a judicial override. Therefore, in this case, the [c]ourt will overturn the verdict. We will dismiss the charges without a sentence for the Defendant.
>
> ….
>
> This case has bothered me. I have woken up at night thinking this case should not have been brought to trial. It really should not have been brought to trial. Once [Gross] passed it just shouldn't have been brought to trial.
>
> Again, I realize that the Commonwealth, you can't do anything about a victim who isn't here. Okay? And cases are often dismissed on that basis when [witnesses] are uncooperative. And in this case [Gross] died….
>
> I was unimpressed -- I know she just walked out, I was unimpressed by [Tome], who essentially absented herself for caring for this woman for two years and then Monday morning quarterback[ed] the care the Defendant was providing. I am bothered by that. And it certainly, maybe, could be civil. Probably

- 7 -

she can't meet that burden either, but it certainly is not a criminal act.

I do not want to create -- it is against public policy to create a disincentive for caregivers to care for people who are not in a nursing home, [who] their family won't put in a nursing home, and [family] who have absented themselves from taking care of them, which is I think what happened here.

And, again, I think that the Commonwealth would have us infer what [Gross] would have said, but [Gross] also might have exonerated the Defendant. So I am not going to infer one way or the other, and [] if I have to infer, the inference goes against the Commonwealth and in favor of the Defendant. I do have to infer that she was mentally competent and signed her own checks. Okay? … I believe in the jury system. I really wanted the jury to do the right thing here, but I think it shocks the conscience, what happened here, and I am very bothered by it. Okay?

***Id.*** at 9-11 (some paragraph breaks omitted). The trial court then vacated Defendant's conviction and dismissed the charges.

The Commonwealth filed a timely appeal.[5] Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issues for review:

I. Did the trial court err in *sua sponte* overturning the jury's verdict where Defendant had not filed a post-sentence motion requesting the verdict be overturned, where the Commonwealth, the court, and the Defendant had mutually agreed the Defendant would do

_____

[5] Given the procedural posture, the Commonwealth's appeal does not implicate double jeopardy under the Fifth Amendment to the United States Constitute and Article 1, Section 10 of the Pennsylvania Constitution. ***See U.S. v. Wilson***, 420 U.S. 332, 352-53 (1975) (explaining "when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause[,]" because "[c]orrection of an error of law at that stage would not grant the prosecutor a new trial or subject the defendant to the harassment traditionally associated with multiple prosecutions.").

so, and where any errors were not so manifest that immediate relief was essential?

II. Did the trial court err in overturning the jury's verdict where the Commonwealth presented evidence that was sufficient to prove each and every element of theft by deception where the Commonwealth proved Defendant intentionally obtained money belonging to the victim by cashing checks at amounts greater than originally written, that Defendant created a false impression of value by writing values in the victim's check receipt book that were less than the money cashed, and by altering checks that were signed by the victim, and [w]here the [] amount taken was in excess of $2,000?

III. Did the trial court err in vacating the Defendant's conviction based on inconsistent verdicts?

IV. Did the trial court err in overturning the jury's verdict on the grounds that it was against the weight of the evidence, where the trial court effectively acted as a thirteenth juror in conducting its own evaluation of the evidence, and ruled based on public policy considerations?

Commonwealth Brief at 5-6.[6]

Though the Commonwealth identifies four issues, each issue challenges the trial court's decision to vacate Defendant's conviction and dismiss the charges. The Commonwealth argues the trial court denied it the opportunity to respond to Defendant's oral motion challenging the verdict. *Id.* at 23. The Commonwealth points to the parties' agreement that Defendant would file a written post-sentence motion, after which the Commonwealth could file a response. *Id.* at 24-25. Further, the Commonwealth asserts the trial court improperly granted extraordinary relief despite there being no motion on the record. *Id.* at 25-26.

---

[6] Defendant did not file an appellate brief.

The trial court states for the first time in its Rule 1925(a) opinion that it set aside the jury's verdict pursuant to Pa.R.Crim.P. 704(B). Trial Court Opinion, 2/10/23, at 2-3. Rule 704(B) provides:

**(B) Oral Motion for Extraordinary Relief.**

(1) **Under extraordinary circumstances, when the interests of justice require**, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial.

(2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.

(3) A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.

Pa.R.Crim.P. 704(B) (emphasis added).

The comment to Rule 704 clarifies when a motion for extraordinary relief is appropriate:

Under paragraph (B), when there has been an error in the proceedings that would clearly result in the judge's granting relief post-sentence, the judge should grant a motion for extraordinary relief before sentencing occurs. Although trial errors may be serious and the issues addressing those errors meritorious, **this rule is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential.** It would be appropriate for counsel to move for extraordinary relief, for example, when there has been a change in case law, or, in a multiple count case, when the judge would probably grant a motion in arrest of judgment on some of the counts post-sentence. Although these examples are not all-inclusive, they illustrate the basic purpose of the rule: when there has been an **egregious error in the proceedings**, the interests of justice are best served by deciding the issue before sentence is imposed. Because the relief provided by this section is

> extraordinary, boilerplate motions for extraordinary relief should be summarily denied.

Pa.R.Crim.P. 704, Comment (emphasis added). "Rule 704(B) is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential." ***Commonwealth v. Grohowski***, 980 A.2d 113, 115 (Pa. Super. 2009). Motions for extraordinary relief must not be used "as a substitute vehicle for raising a matter that should be raised in a post-sentence motion." ***Commonwealth v. Askew***, 907 A.2d 624, 627 (Pa. Super. 2006) (citation and quotation marks omitted).

Our review reveals support for the Commonwealth's assertion that Defendant did not submit an oral motion for extraordinary relief. Defense counsel moved for "acquittal," "demurrer," and "to set aside the verdict." N.T., 10/19/22, at 435, 440. Defense counsel did not cite Rule 704 or refer to extraordinary circumstances, nor did counsel allege a manifest or egregious error that required immediate relief. ***See*** Pa.R.Crim.P. 704, Comment; ***see also Commonwealth v. Bozic***, 997 A.2d 1211, 1227 (Pa. Super. 2010). To the contrary, counsel appeared to challenge the sufficiency of the evidence. ***See id.*** at 440 ("[T]here's no way they can come up with that."). At the close of trial on October 19, 2022, and during the hearing on October 28, 2022, the parties discussed Defendant filing a formal, written motion. During the October 28, 2022, hearing, the parties and trial court expressly agreed that Defendant would file a motion **after** sentencing, and the Commonwealth would have an opportunity to respond. N.T., 10/28/22, at 2-4.

Assuming *arguendo* that a Rule 704(B) oral motion was before the court, the trial court erred by granting the motion and vacating the conviction. In its opinion, the trial court stated it set aside the verdict "on the grounds that there had been an error in the proceedings that would clearly result in the granting of post-sentence relief." Trial Court Opinion, 2/10/23, at 3. The trial court also stated that the verdict "shocks one's sense of justice," and the Commonwealth failed to establish the elements of theft by deception. ***See id.*** These conclusions refer to the weight and sufficiency of the evidence, which are properly addressed in a post-sentence motion. ***Cf. Askew***, ***supra***. The trial court also failed to explain why any error in this regard required **immediate** relief. ***See*** Pa.R.Crim.P. 704, Comment.

Accordingly, we conclude the trial court erred by addressing Defendant's claims under Rule 704(B), vacating Defendant's conviction, and dismissing the charges. Defendant should have presented her claims in a written post-sentence motion, particularly in light of the parties' agreement to follow standard post-sentence procedure.[7] We therefore reverse the order, reinstate

---

[7] Though we do not consider the trial court's apparent conclusion that the jury verdict was against the weight and sufficiency of the evidence, we emphasize that a trial court "cannot alter the verdict based upon a redetermination of credibility or a re-evaluation of evidence." ***Commonwealth v. Johnson***, 631 A.2d 639, 643 (Pa. Super. 1993) (citation and quotation marks omitted).

Defendant's conviction, and remand for sentencing.[8]  After sentencing, Defendant may file a post-sentence motion if she wishes to pursue her claims.

Order reversed.  Conviction reinstated.  Case remanded for sentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/14/2023

---

[8] Based on our disposition, we need not address the Commonwealth's arguments that the jury verdict was supported by sufficient evidence; the verdict was not against the weight of the evidence; and the trial court improperly relied on the jury's inconsistent verdicts.